NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| HYUNDAI STEEL COMPANY,<br><br>                Plaintiff,<br><br>NUCOR CORPORATION,<br><br>                Consolidated-Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>                Defendant,<br><br>          and<br><br>NUCOR CORPORATION, and<br>GOVERNMENT OF THE REPUBLIC<br>OF KOREA,<br><br>                Defendant-Intervenors. |

Before:  Hon. Mark A. Barnett,
       Chief Judge

Consol. Court No. 22-00170

**NON-CONFIDENTIAL VERSION**

Business Proprietary Information
Removed from Page: 20

## NUCOR CORPORATION'S RESPONSE TO HYUNDAI STEEL COMPANY'S MOTION FOR JUDGEMENT ON THE AGENCY RECORD

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Theodore P. Brackemyre, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Defendant-Intervenor Nucor Corporation*

Dated: May 19, 2023

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II.  RULE 56.2 STATEMENT ............................................................................ 1

    A.  Administrative Decision Under Review ............................................. 1

    B.  Issues Presented ................................................................................. 2

        1.  Whether Commerce's Decision to Countervail the Provision
            of Additional Free Allowances to Hyundai Steel through the
            KETS Program Is Supported by Substantial Evidence and in
            Accordance with Law? ................................................................. 2

III.  STATEMENT OF FACTS ............................................................................ 3

IV.  STANDARD OF REVIEW ......................................................................... 6

V.  ARGUMENT ................................................................................................ 8

    A.  Commerce's Decision to Countervail the Provision of Additional
        Free Allowances to Hyundai Steel Through the KETS Program Is
        Supported by Substantial Evidence and in Accordance with Law ...................... 8

        1.  Similar to *BGH*, Commerce's Decision to Countervail the
            Additional Free Allowances Provided to Hyundai Steel
            Through the KETS Is Lawful and Supported by Substantial
            Evidence .................................................................................... 9

        2.  Commerce Correctly Determined that Additional Free
            Allowances Provided Through the KETS Constitute a
            Financial Contribution .............................................................. 14

        3.  Commerce Properly Found that the Additional Free
            Allowances Provided Through the KETS Confer a Benefit ..................... 16

        4.  Commerce Properly Determined that the Additional Free
            Allowances Provided Through the KETS Are Specific ......................... 19

VI.  CONCLUSION ............................................................................................ 21

NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*BGH Edelstahl Siegen GmbH v. United States,*
   600 F.Supp.3d 1241 (Ct. Int'l Trade 2022) ...................................................... *passim*

*Ceramica Regiomontana, S.A. v. United States,*
   810 F.2d 1137 (Fed. Cir. 1987)....................................................................7

*Consol. Fibers, Inc. v. United States,*
   32 CIT 24, 535 F.Supp.2d 1345 (2008)...................................................7

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966)........................................................................6

*Dongtai Peak Honey Indus. Co. v. United States,*
   38 CIT 334, 971 F.Supp.2d 1234 (2014)...........................................6, 7

*Fujitsu Gen. Ltd. v. United States,*
   88 F.3d 1034 (Fed. Cir. 1996)...................................................................6

*INS v. Elias-Zacarias,*
   502 U.S. 478 (1992)......................................................................7, 8

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States,*
   38 CIT 1632, 28 F.Supp.3d 1317 (2014) .........................................7

*Matsushita Elec. Indus. Co. v United States,*
   750 F.2d 927 (Fed. Cir. 1984)...................................................................7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983)..............................................................................7

*Universal Camera Corp. v. NLRB,*
   340 U.S. 474 (1951).............................................................................6

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..............................................................6

19 U.S.C. § 1677(5)(D)(ii)...........................................................14, 16

19 U.S.C. § 1677(5)(E)...............................................................16, 17

19 U.S.C. § 1677(5)(E)(i)-(iv) ..............................................................17

Consol. Ct. No. 22-00170                                    NON-CONFIDENTIAL VERSION

19 U.S.C. § 1677(5)(E)(iv) ................................................................................18

19 U.S.C. § 1677(5A)(D) ..................................................................................19

19 U.S.C. § 1677(5A)(D)(i) ...............................................................................19

19 U.S.C. § 1677(5A)(D)(ii) ..............................................................................19

**Regulations**

19 C.F.R. § 351.503(a) ......................................................................................18

19 C.F.R. § 351.503(b) ......................................................................................17

19 C.F.R. § 351.503(b)(2) ..................................................................................18

19 C.F.R. § 351.503(c) ......................................................................................17

**Administrative Materials**

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea,*
    87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) ......................................2, 5, 8

*Certain Hot-Rolled Steel Flat Products From the Republic of Korea,*
    86 Fed. Reg. 60,797 (Dep't Commerce Nov. 4, 2021) ......................................3, 5

*Countervailing Duties: Final Rule,*
    63 Fed. Reg. 65,348, 65,361 (Dep't of Commerce Nov. 25, 1998) .......................13

*Forged Steel Fluid End Blocks From the Federal Republic of Germany,*
    85 Fed. Reg. 31,454 (Dep't Commerce May 26, 2020) ....................................12

*Forged Steel Fluid End Blocks From the Federal Republic of Germany,*
    85 Fed. Reg. 80,011 (Dep't Commerce Dec. 11, 2020) ....................................12

## I.      INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following response to the November 28, 2022 brief in support of the motion for judgment on the agency record filed by Plaintiff Hyundai Steel Company ("Hyundai Steel" or "Plaintiff").  Pl's. Br. in Supp. Of Pl's. Mot. for J. on the Agency R. (Nov. 28, 2022), ECF No. 25 ("Plaintiff Br."). For the reasons discussed in this brief, in conjunction with the arguments presented by Defendant United States, Defendant-Intervenor respectfully requests that this court reject the arguments raised by Plaintiff and affirm aspects of the Final Results of the U.S. Department of Commerce ("Commerce") in the 2019 administrative review of the countervailing duty ("CVD") order on *Certain Hot-Rolled Steel Flat Products from the Republic of Korea* ("*HRS from Korea*").

As directed by this court, Order (Mar. 6, 2023), ECF. No. 33, Defendant-Intervenor does not intend to repeat arguments raised by Defendant in its April 28, 2023 brief with respect to Plaintiff's arguments on the countervailability of additional free carbon emissions allowances provided under the Korea Emissions Trading System ("KETS") program, Def.'s Resp. to Pls.' Mots. for J. on the Agency R. (Apr. 28, 2023), ECF No. 34 ("Defendant Br.").  Nucor concurs with and adopts by reference the arguments made by Defendant with regard to the countervailability of the KETS program.

## II.     RULE 56.2 STATEMENT

### A.      Administrative Decision Under Review

The administrative determination challenged in this appeal is Commerce's Final Results in the 2019 administrative review of the CVD order on *HRS from Korea*.  Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) (final results of countervailing duty admin.

rev.; 2019), P.R. 132 ("Final I&D Memo").[1] *See also Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) (final results of countervailing duty admin. rev.; 2019), P.R. 133 ("Final Results").

     **B.**    **Issues Presented**

          **1.**    **Whether Commerce's Decision to Countervail the Provision of Additional Free Allowances to Hyundai Steel through the KETS Program Is Supported by Substantial Evidence and in Accordance with Law?**

Yes.  Commerce appropriately found that the Government of Korea's ("GOK") provision of additional free carbon emissions allowances under the KETS program is countervailable. Plaintiff incorrectly argues that the provision of these allowances is not specific and does not constitute a financial contribution or confer a countervailable benefit.  Plaintiff's arguments are in error.  Under the KETS program, the GOK provides an additional three percent allocation of free allowances to companies, such as Hyundai Steel, that satisfy certain high international trade intensity and/or high emissions production cost criteria.   In effect, the GOK relieves these companies from the obligation of having to purchase additional allowances from the government. This extra allocation is a financial contribution because it constitutes revenue that the GOK would otherwise be able to collect.  These additional allowances confer a benefit to Hyundai Steel because they provide the company with something of value at no cost.  And these allowances are specific because they are provided to an expressly limited set of industries and companies, determined by the non-objective criteria established under Korean law.  This court has entertained nearly identical

---

[1]    Documents on the public record of the underlying administrative review are identified here as "P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on August 15, 2022.  Documents in the confidential administrative record are identified by name, followed by "C.R." and the corresponding record number.

arguments in *BGH Edelstahl Siegen GmbH v. United States*, 600 F.Supp.3d 1241 (Ct. Int'l Trade 2022) ("*BGH*"), where it found that Commerce's decision to countervail free allowances provided under a similar emissions trading program was supported by substantial evidence and in accordance with law.  The court should reach the same decision here.

## III.   STATEMENT OF FACTS

Commerce initiated the 2019 administrative review of the CVD order covering *HRS from Korea* on December 8, 2020 and selected Plaintiff Hyundai Steel as the sole mandatory respondent on January 12, 2021.  *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 86 Fed. Reg. 60,797 (Dep't Commerce Nov. 4, 2021) (prelim. results of countervailing duty admin. rev. and rescission in part; 2019), P.R. 100 ("Preliminary Results") and accompanying Preliminary Decision Memorandum, P.R. 98 at 2 ("Prelim Decision Memo").

Hyundai Steel and the GOK submitted their initial questionnaire responses on March 4, 2021.  Prelim Decision Memo at 2.  Commerce had initiated an investigation into the KETS program during the 2018 administrative review, but the agency deferred examination of allowances provided under the KETS program to the 2019 review.  *Id.* at 3 n.19.  Commerce issued new subsidy allegation questionnaires relating to this program on April 26, 2021, to which Hyundai Steel and the GOK submitted responses on May 17, 2021.  *Id.* at 3.  Hyundai Steel and the GOK submitted supplemental questionnaire responses in September 2021, providing additional information concerning the KETS program.  *See id.* at 19-20.

Under the KETS, Korean companies are required to surrender emissions permits (*i.e.*, allowances) to offset their annual greenhouse gas emissions.  *Id.* at 17.  Allowances are primarily allocated by the GOK at the start of each annual compliance period.  *Id.* at 17.  During Phase 2 of the KETS, which covers the 2019 POR, the GOK calculated the number of allowances it would

assign a company and then allocated 97% of that annual allotment to each company free of charge. *Id.* at 18.  The Korean Act on the Allocation and Trading of Greenhouse Gas Emissions Permits ("AAGEP") and accompanying enforcement decree ("AAGEP Enforcement Decree") provide that Korean companies meeting certain high trade intensity and emissions production cost criteria qualify to receive the full 100% allotment of allowances (*i.e.*, an additional three percent) at no cost from the GOK.  *Id.* at 18.

During Phase 2 of the KETS, the GOK targeted the Korean "steel" industry and other manufacturing sectors, granting them "emission permits free of charge."  Letter from Yoon & Yang LLC to Sec'y Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Additional Translations Accompanying GOK's Carbon Emissions New Subsidy Allegation Questionnaire Response* (May 20, 2021), P.R. 77 at Exhibit CEP-8, p. 2 ("GOK Carbon Emissions NSA QR Translations").  As a steel producer, Hyundai Steel qualified for the full 100% allocation.  Prelim Decision Memo at 19-20.  *See also* Letter from Yoon & Yang LLC to Sec'y Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: GOK's Carbon Emissions New Subsidy Allegation Questionnaire Response* (May 17, 2021), P.R. 76, C.R. 77 at 1-2 ("GOK Carbon Emissions NSA QR").

Regardless of whether a company receives the additional three percent of allowances free of charge from the GOK, if that entity's emissions exceed its freely allocated allowances for the year, the company is responsible for acquiring additional allowances to account for the difference. Prelim Decision Memo at 19.  The AAGEP provides that Korean companies may do this by (1) using banked allowances from prior compliance years, (2) purchasing additional allowances from other private entities through a centralized exchange, (3) purchasing additional allowances directly from other private entities, (4) borrowing allowances from a future compliance year, (5) applying

earned credits for emissions offset programs, and/or (6) purchasing allowances from a GOK-run auction. *Id.* Further, for companies unable to obtain sufficient allowances to cover their incurred emissions, the AAGEP establishes "that the GOK may impose a penalty of not more than three times the average market price." *Id.*

Commerce published its Preliminary Results on November 4, 2021. Preliminary Results. Commerce preliminarily determined that the provision of additional free allowances constituted a countervailable subsidy. *Id.* at 19-21. Commerce found that "in providing an additional, free emission allocation to certain sectors, including Hyundai Steel, the GOK is providing a financial contribution in the form of revenue forgone." *Id.* at 20. And the agency determined a benefit to exist "to the extent that the recipient is relieved of the obligation to purchase additional allowances." *Id.* Commerce also found "the provision of additional free {allowances} to certain sectors, including Hyundai Steel, to be *de jure* specific." *Id.*

Parties filed affirmative case briefs and rebuttal briefs in January 2022. Final I&D Memo at 2. Regarding the KETS program, in their case briefs, Hyundai Steel and the GOK argued that the additional three percent allocation must be considered in light of the entire KETS and that the program as a whole imposes a burden on Korean respondents such that any additional allowances received are not countervailable. *See id.* at 10-14. In its rebuttal brief, Nucor argued that Commerce appropriately countervailed the provision of additional free allowances, consistent with the statute as well as the agency's regulations and established practice. *Id.* at 14-17.

Commerce published its Final Results on May 9, 2022. Final Results. Commerce continued to find that the provision of additional free emissions allowances through the KETS were specific and constituted a financial contribution that provided a countervailable benefit. Final I&D Memo at 17. With respect to financial contribution, Commerce reasoned that "when

evaluating revenue forgone that would have been due otherwise, it is not a matter of what the GOK

would have done with the {allowances} had they not given them to qualifying entities like Hyundai

Steel," but rather whether "the GOK would have retained the ability to collect the three percent

allocation from Hyundai Steel." *Id.* at 22.  As to the benefit received, Commerce explained that

"{w}hen analyzing whether a potential countervailable subsidy exists, Commerce does not take

into account the effects of the subsidy," and it relied on its "long-standing approach to evaluate

subsidies regardless of any overall impact or burden from an overarching program." *Id.* at 18-19.

Regarding specificity, Commerce determined that the additional three percent allocation is *de jure*

specific, reasoning that, "while the AAGEP and implementing rules do establish criteria, those

criteria result in an express statutory limitation on which industries qualify for the additional

allocation by setting thresholds that industries must meet in order to qualify." *Id.* at 23.

 In sum, Commerce continued to countervail the additional emissions allowances received

by Hyundai Steel through the KETS program in the Final Results, and this appeal ensued.

## IV. <u>STANDARD OF REVIEW</u>

 This court reviews Commerce's decisions in CVD proceedings to determine whether those

decisions are "unsupported by substantial evidence on the record, or otherwise not in accordance

with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).  *See also Fujitsu Gen. Ltd. v. United States*, 88 F.3d

1034, 1038 (Fed. Cir. 1996).  Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Universal Camera Corp. v. NLRB*, 340 U.S.

474, 477 (1951) (citation omitted).  It is "something less than the weight of the evidence, and the

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed.*

*Mar. Comm'n*, 383 U.S. 607, 620 (1966).  *See also Dongtai Peak Honey Indus. Co. v. United*

*States*, 38 CIT 334, 336, 971 F.Supp.2d 1234, 1239 (2014), *aff'd*, 777 F.3d 1343, 1349 (Fed. Cir. 2015).

A plaintiff cannot ask the court to re-weigh the evidence on the record and decide the case for Commerce. *See Matsushita Elec. Indus. Co. v United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Factual findings by Commerce are afforded considerable deference. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (stating that in fact-intensive situations, agency conclusions should be reversed only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion). In addition, the court "uphold{s} a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted); *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987). As such, Commerce need only "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation omitted).

Moreover, in determining whether Commerce's decisions in CVD proceedings are "unsupported by substantial evidence on the record, or otherwise not in accordance with law," this court reviews the agency's conduct under the abuse of discretion standard. *See Dongtai Peak*, 38 CIT at 336, 971 F.Supp.2d at 1239; *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 38 CIT 1632, 1634-35, 28 F.Supp.3d 1317, 1323 (2014). Accordingly, the court has recognized that it "(1) must consider whether {Commerce's} decision was based on a consideration of relevant factors and whether there has been a clear error of judgment, and (2) analyze whether a rational connection exists between {Commerce's} factfindings and its ultimate action." *Consol. Fibers, Inc. v. United States*, 32 CIT 24, 35-36, 535 F.Supp.2d 1345, 1354 (2008).

## V.    ARGUMENT

### A.    Commerce's Decision to Countervail the Provision of Additional Free Allowances to Hyundai Steel Through the KETS Program Is Supported by Substantial Evidence and in Accordance with Law

Commerce properly found that the GOK's provision of extra free emissions allowances to Hyundai Steel under the KETS constitutes a countervailable subsidy. In the Final Results, Commerce correctly focused its analysis on the "additional three percent allocation" that were provided at no cost to Hyundai Steel and other companies that satisfied specific high trade intensity and emissions production cost criteria established in the AAGEP. Final I&D Memo at 18-23. Commerce reasonably found that this additional allocation amounted to revenue foregone, reasoning that "the three percent allocation represents a value that the GOK will no longer collect." *Id.* at 20-22. Commerce thoroughly considered and addressed arguments raised by Hyundai Steel and the GOK in the underlying administrative review, demonstrating that the KETS program gives additional free allowances to Hyundai Steel that are specific, constitute a financial contribution, and provide a countervailable benefit. *See id.* at 9-24.

Still, Plaintiff argues in this action that the KETS program does not provide a financial contribution or a benefit and is not specific. Plaintiff Br. at 7-8. Defendant has effectively rebutted these claims at length, demonstrating that Commerce lawfully countervailed the provision of these allowances. Defendant Br. at 11-24. With respect to the countervailability of the KETS program, we agree with Defendant and support the arguments made in its brief. *See id.* Especially in light of the considerable deference afforded to Commerce to conduct fact-intensive investigations and make program- and period-specific factual determinations, *see, e.g., Elias-Zacarias*, 502 U.S. at 483-84, Commerce's findings were reasonable and supported by the record. Further, Commerce made these determinations against the backdrop of established agency and court precedent in

which Commerce has found additional free allowances provided under similar emissions trading programs to be countervailable. *See, e.g.*, *BGH*, 600 F.Supp.3d 1241. Accordingly, despite Plaintiff's claims to the contrary, Commerce's countervailability determination was in accordance with law, based on substantial evidence, and not an abuse of the agency's discretion.

To support Defendant's brief, in turn below, we provide additional argument and context in support of each of the three elements of Commerce's CVD framework (*i.e.*, financial contribution, benefit, and specificity) challenged by Plaintiff in this appeal. As an initial matter, however, we stress that this court has recently addressed and rejected a nearly identical challenge in *BGH*. There, this court upheld Commerce's decision to countervail a similar emissions program in Germany. *Id.* at 1262. It is thus telling that Plaintiff fails entirely to mention the *BGH* decision in its brief. This is especially so given that the deadline to file opening briefs in this action (*i.e.*, November 28, 2022) was more than one month after the date this court issued its opinion in *BGH* (*i.e.*, October 12,2022). *See* Plaintiff Br.; *BGH*, 600 F.Supp.3d 1241. And Commerce's determination in the investigation underlying the *BGH* appeal had been discussed at length throughout this proceeding. *See* Final I&D Memo at 15-22. While Defendant appropriately analogizes to *BGH* at points in its brief, Defendant Br. at 15-19, we believe the case warrants an even closer analysis.

### 1. Similar to *BGH*, Commerce's Decision to Countervail the Additional Free Allowances Provided to Hyundai Steel Through the KETS Is Lawful and Supported by Substantial Evidence

In *BGH*, a German steel producer (*i.e.*, BGH) challenged Commerce's final determination in its CVD investigation of forged steel fluid end blocks, arguing in part that the agency improperly countervailed the provision of additional free carbon emissions allowances under the European Union's Emissions Trading System ("EU ETS"). *BGH*, 600 F.Supp.3d at 1247, 1262-65. The

plaintiff argued that additional free allowances provided to BGH under the EU ETS did not constitute a financial contribution or a countervailable benefit and that the program was not *de jure* specific. *Id.* at 1262. This court disagreed, finding that "Commerce's determination that the additional free emissions allowances given to BGH under the ETS is a countervailable subsidy . . . {to be} supported by substantial evidence and in accordance with law." *Id.*

Extra free emissions allowances are provided in a similar fashion to European companies under the EU ETS as they are to Korean companies as part of the KETS. "Under the ETS, the EU requires companies emitting large amounts of greenhouse gas into the atmosphere to reduce their emissions and to surrender emissions allowances for the carbon they emitted the previous year." *Id.* Akin to the KETS, *see* Prelim Decision Memo at 19, EU companies obtain allowances "(1) freely from their government, (2) by purchasing allowances through an EU-regulated auction, or (3) by purchasing from private companies on a secondary market." *BGH*, 600 F.Supp.3d at 1262-63. In the same way that the GOK provided 97% of allowances free of charge during this phase of the KETS, Final I&D Memo at 19-20, all EU companies other than power stations "are given allowances to cover 44.2% of the emissions of the most efficient companies in each sector" through the EU ETS, *BGH*, 600 F.Supp.3d at 1263. However, like the KETS, under the EU ETS, "{f}or certain large companies at significant risk of carbon leakage . . . the state provides additional free allowances to meet 100% of the allowances needed." *Id.* And if a company is "not able to cover its emissions using only the freely allotted allowances," it "must purchase additional allowances from the government auction or a private party or invest in technological improvements to reduce its emissions." *Id.* Therefore, just as it did when with respect to the additional three percent allocation provided through the KETS, *see* Final I&D Memo at 17-24, Commerce found in the proceeding underlying *BGH* that the provision of additional free allowances under the EU ETS (1)

constituted a financial contribution, (2) provided a countervailable benefit, and (3) were specific, *see BGH*, 600 F.Supp.3d at 1262-65.

First, "Commerce reasonably determined the distribution of additional free carbon emissions allowances to companies on Germany's carbon leakage list, including BGH, to be a financial contribution." *Id.* at 1262. "As a company on the carbon leakage list . . . BGH received additional freely allocated emissions allowances beyond the standard rate of allocation." *Id.* at 1263. "Specifically, BGH received allowances equaling 100% of {its} emissions," but if it "were not on the carbon leakage list, it would have only received {allowances for} 44.2% of {its} emissions." *Id.* This court reasoned that the "number of additional allowances BGH received as a result of being on the carbon leakage list is the number of the allowances BGH did not have to purchase and therefore revenue the government did not collect." *Id.* The court further averred that the "issue is not whether the {German government} can sell the free allowances to companies," but rather whether it "forgoes revenue when it gives additional free allowances to companies on the carbon leakage list like BGH," which reduces "the number of allowances BGH must purchase at the state-run auction or the secondary market." *Id.*

Importantly, the carbon leakage list that determined which companies received additional allowances from the EU ETS in *BGH* operates very similarly to the high trade intensity and emissions production cost criteria established under the AAGEP for the KETS. For the relevant period, for an industry to be placed on the carbon leakage list, it was required to meet one of three criteria:

1. "The sum of direct and indirect additional costs (*i.e.*, induced by the implementation of the EU ETS) would increase production cost, calculated as a proportion of the gross value added, by at least 5 percent; and at the same time the sector's trade intensity with non-EU countries is greater than 10 percent."

2. "The sum of direct and indirect additional costs (*i.e.*, induced by the implementation of the EU ETS) would increase production cost, calculated as a proportion of the gross value added by at least 30 percent."

3. "The sector's trade intensity with non-EU countries is greater than 30 percent."

Preliminary Decision Memorandum accompanying *Forged Steel Fluid End Blocks From the Federal Republic of Germany*, 85 Fed. Reg. 31,454 (Dep't Commerce May 26, 2020) (prelim. affirm. countervailing duty deter., and alignment of final deter. with final antidumping duty deter.) at 26. Therefore, Commerce concluded that the EU ETS "regulatory system specifically establishes a distinct set of rules for the companies on the carbon leakage list that is unique from the set of rules for other companies under this program." Issues and Decision Memorandum accompanying *Forged Steel Fluid End Blocks From the Federal Republic of Germany*, 85 Fed. Reg. 80,011 (Dep't Commerce Dec. 11, 2020) (final affirm. countervailing duty deter.) at 49.

Likewise, under the KETS, Article 12(4) of the AAGEP and Article 14 of the AAGEP Enforcement Decree provide that sectors that meet certain high trade intensity and/or high emissions production costs criteria qualify to receive the entire 100% allowances allocation from the GOK each year. Prelim Decision Memo at 18; Final I&D Memo at 20. Specifically, criteria established by the AAGEP provide that companies meeting the following thresholds receive additional free allowances under the KETS:

1. "30% or above for *Trade Intensity*" – calculated as "{a}nnual average of (exports + imports) ÷ (sales + imports) during the base period, which is from year 2013 through 2015;"

2. "30% or above for *Production Costs*" – calculated as "{a}nnual average of (GHG emitted amount × market price of the permits) ÷ amount of value-added during the base period, which is from year 2013 through 2015."

3. "10% or above for *Trade Intensity* and 5% or above for *Production Costs*"

GOK Carbon Emissions NSA QR at 2. *See also* Final I&D Memo at 23. These specific criteria, which are strikingly similar to those required to be on the EU ETS carbon leakage list, led

Commerce to conclude that "the AAGEP and implementing rules not only establish explicit limitations but also are not objective criteria or conditions," as defined by the statute.  Final I&D Memo at 23.

Second, Commerce found that the extra allowances provided BGH constituted a countervailable benefit because the company "was relieved of the obligation to pay for the additional emissions allowances it was given because it was on the carbon leakage list."  *BGH*, 600 F.Supp.3d at 1263.  This court determined that the German government provided those allowances "to BGH at no cost," despite the respondent's argument that the requirement to purchase the emissions allowances was a burden, or an "obligation significantly increasing its energy costs."  *Id.* at 1263-64.  The court rejected that argument, reasoning that "Commerce determines benefit by the reduction or elimination of the obligation, without regard to the source of that obligation." *Id.* at 1264 (citing *Countervailing Duties: Final Rule*, 63 Fed. Reg. 65,348, 65,361 (Dep't of Commerce Nov. 25, 1998)).  Ultimately, this court found that "{d}ue to receiving the additional free allowances, BGH received something for free."  *Id.*  In other words, the respondent received allowances that it would have otherwise "been required to pay to acquire at auction or on the private market."  *Id.*

Third, "Commerce reasonably determined the ETS additional free allowances program is *de jure* specific because it is expressly limited to a group of companies." *Id.*  The agency found that eligibility for this program is "limited by law to the companies on the carbon leakage list."  *Id.* This court rejected BGH's argument that "Commerce's *de jure* specificity determination {was} an unlawful rule of universal availability," finding instead that the "standard employed by Commerce is found in the statute."  *Id.*  The court also rejected the respondent's contention that free allowances were granted to companies based on objective criteria (*i.e.*, "each company's risk of

carbon leakage") and were thus not specific, determining that "not all companies subject to the ETS are eligible to be on the carbon leakage list." *Id.* Accordingly, because the statute requires "objective criteria" that "must not favor certain industries over others," the court explained that it is "reasonably discernible that Commerce determined the restrictions of the carbon leakage list to favor certain enterprises or industries or group of certain industries or enterprises." *Id.*

In short, as this court made clear in *BGH*, Commerce properly countervails the provision of additional free allowances under emissions trading programs in circumstances such as those present here. As detailed further below, like the EU ETS program in *BGH*, the KETS program provides additional emissions allowances to companies free of charge based on trade intensity and production cost data such that the government forgoes the opportunity to collect revenue on those additional allowances and the respondent companies are provided something of value at no cost.

### 2. Commerce Correctly Determined that Additional Free Allowances Provided Through the KETS Constitute a Financial Contribution

A government makes a financial contribution when it forgoes collecting revenue that is otherwise due. 19 U.S.C. § 1677(5)(D)(ii). On that basis, Commerce determined that the additional three percent of free allowances afforded Hyundai Steel through the KETS program constituted a financial contribution. Prelim Decision Memo at 20; Final I&D Memo at 21-22. Nevertheless, Plaintiff mistakenly argues that a financial contribution is not provided because the additional allowances do not constitute revenue that is otherwise due to the GOK. Plaintiff Br. at 9-20. Commerce thoroughly addressed this line of argument, explaining that "when evaluating revenue forgone that would have been due otherwise, it is not a matter of what the GOK would have done with the {allowances} had they not given them to qualifying entities like Hyundai Steel," but rather "the key consideration is that, in lieu of giving these entities the additional {allowances} for free, the GOK would have retained the ability to collect the three percent

allocation from Hyundai Steel." Final I&D Memo at 22.  Put simply, "{r}egardless of whether the additional allocation was provided to Hyundai Steel from the GOK, or whether Hyundai Steel purchased the allocations from a government auction or from another company, the three percent allocation represents a value that the GOK will no longer collect." *Id.*  Building on the agency's reasoning, Defendant rebuts Plaintiff's arguments in detail.  *See* Defendant Br. at 15-17.  We provide two additional points for the court's consideration.

First, Plaintiff's argument is unduly focused on the mechanisms through which the value of the freely allocated allowances would be transmitted between the GOK and Hyundai Steel.  *See* Plaintiff Br. at 9-20.  In attempting to parse the language of the statute, Plaintiff wrongly fixates on the timing of when Hyundai Steel would have owed any revenue to the GOK.  *Id.* at 11-13.  In this sense, Plaintiff fails to see the forest through the trees.  The very purpose of the KETS program is to provide companies, such as Hyundai Steel, that meet the specified trade and emissions production criteria with additional allowances.  *See* Prelim Decision Memo at 18.  There is no question that these additional allowances have value or that Hyundai Steel is put in a better position by receiving them.  Indeed, as Defendant noted, "Hyundai Steel's overreliance on the options for obtaining additional {allowances} ignores the fact that the additional three percent allocation placed it in an *initial* advantageous position."  Defendant Br. at 17.  Thus, given the basic framework of the program, Commerce's interpretation of the revenue forgone provision in the statute is not unreasonable.  Nor is it unsupported by substantial evidence.  Rather, Commerce reasonably found the GOK provides a financial contribution to Hyundai Steel.

Second, Plaintiff mistakenly argues that the existence of a secondary market for KETS emissions allowances means that there could not be revenue forgone through the allocation of additional allowances.  *See* Plaintiff Br. at 19-20.  To start, as Defendant addresses, "{e}ven if

Hyundai Steel could have theoretically purchased those allocations from the private market instead of through government auction, the three percent allocation still represents a value that the Korean government will no longer collect from Hyundai Steel." Defendant Br. at 17. Moreover, there is no statutory requirement that the revenue be due from the respondent in question. *See* 19 U.S.C. § 1677(5)(D)(ii). That is, for the sake of argument, if Hyundai Steel were not to receive its free three percent allocation and it purchased those additional allowances entirely from the private markets – instead of the GOK-run auction – Hyundai Steel would still be reducing the number of allowances available to be sold privately and thus requiring another company to purchase additional allowances from the GOK. The point being that, whether it is revenue received from Hyundai Steel or another company, by giving Hyundai Steel three percent of its allowances for free, the GOK forgoes collecting revenue on those allowances. Additionally, there is a penalty price that GOK charges for companies that fail to cover their annual emissions with sufficient allowances. Prelim Decision Memo at 17-18. Allowance trading aside, this penalty prices establishes a clear link between the revenue the GOK could potentially collect and the revenue it forgoes by allocating additional free allowances.

### 3. Commerce Properly Found that the Additional Free Allowances Provided Through the KETS Confer a Benefit

A government confers a countervailable benefit "where there is a benefit to the recipient." 19 U.S.C. § 1677(5)(E). Therefore, in finding that the allocation of additional emission allowances provided something of value to Hyundai Steel, Commerce reasonably determined that the provision of those allowances conferred a countervailable benefit. Prelim Decision Memo at 20; Final I&D Memo at 18-19. Yet, Plaintiff argues at length that the total burden imposed by the KETS somehow negates the benefit provided Hyundai Steel and other companies that are allocated additional free allowances. *See* Plaintiff Br. at 20-28. Commerce comprehensively addressed this

line of argument, *see* Final I&D Memo at 18-19, and Defendant rebutted these claims throughout

its response brief, *see* Defendant Br. at 17-20.  Indeed, as Defendant addressed, the question of

whether a benefit is conferred is separate from the effect of that subsidy.  *Id.* at 18-19.  *See also* 19

C.F.R. § 351.503(c).  In other words, any burden imposed on Hyundai Steel by the entirety of the

KETS regulatory framework is distinct from an analysis of whether the additional free allowances

provided under the KETS program confer a benefit to the respondent.

We highlight for the court the broad statutory authority that Commerce possesses to

identify and countervail subsidies when a benefit is conferred to a respondent company.  As noted

above, the statute provides plainly that a "benefit shall normally be treated as conferred where

there is a benefit to the recipient."  19 U.S.C. § 1677(5)(E).  The statute then lists four illustrative

examples (*i.e.*, equity infusions, loans, loan guarantees, and goods or services provided for less

than adequate remuneration ("LTAR")).    19  U.S.C.  § 1677(5)(E)(i)-(iv).    As  Plaintiff

acknowledges, Plaintiff Br. at 21, Commerce's regulations allow it to find countervailable benefits

for "other subsidies" that are not specifically enumerated in the statute or the agency's regulations,

19  C.F.R.  § 351.503(b).    However,  Plaintiff  erroneously  argues  that  Commerce's  benefit

determination was unlawful because it failed to consider the extent to which the free allowances

provided through the KETS program were similar to the illustrative examples listed in the statute.

Plaintiff Br. at 21-22.  Plaintiff's argument is based on the requirement in the agency's regulation

that, when paragraph (b)(1) of 19 C.F.R. § 351.503 does not apply, under paragraph (b)(2),

Commerce "will determine whether a benefit is conferred by examining whether the alleged

program or practice has common or similar elements to the four illustrative examples in sections

771(5)(E)(i) through (iv) of the Act."  Plaintiff Br. at 21-22; 19 C.F.R. § 351.503(b)(2).  Plaintiff

claims that Commerce failed to conduct this analysis.  Plaintiff Br. at 22.  This argument is in error.

Commerce made clear that it found a countervailable benefit to exist under 19 C.F.R. § 351.503(b)(2) on the grounds that "the recipient is relieved of the obligation to purchase additional allowances." Prelim Decision Memo at 20; Final I&D Memo at 24. While Commerce did not address each of the illustrative examples in the statute by name, which is not specifically required by the statute or the agency's regulations, Commerce did fully explain its benefit determination and did so in specific reference to 19 C.F.R. § 351.503(b)(2). *See* Final I&D Memo at 18. The agency noted that the "fact that the subsidy program itself, or some related law or regulation, affects the recipient's behavior is not material to Commerce's determination as to whether a countervailable benefit is conferred under the program." *Id.* Commerce also explained that it "would not consider the overarching burden imposed by the K-ETS program as a means of offsetting the assistance provided via the additional three precent {allowances} allocation." *Id.*

Moreover, while the type of carbon emissions allowances program at issue in this case is not listed by name in the statute or the agency's regulations, the benefit provided respondent companies does closely resemble specifically enumerated subsidy programs. For instance, by paying nothing for something of value, Hyundai Steel and other Korean companies receive additional emissions allowances for LTAR. *See* 19 U.S.C. § 1677(5)(E)(iv); 19 C.F.R. § 351.503(a). This court in *BGH* made a similar point, explaining that "{d}ue to receiving the additional free allowances, BGH received something for free—allowances BGH otherwise would have been required to pay to acquire at auction or on the private market." *BGH*, 600 F.Supp.3d at 1264. The same logic applies here. And contrary to Plaintiff's claims, no additional explanation was required from Commerce as to its benefit determination.

**4.      Commerce Properly Determined that the Additional Free Allowances Provided Through the KETS Are Specific**

A government provides a subsidy that is *de jure* specific where it "expressly limits access to the subsidy to an enterprise or industry."  19 U.S.C. § 1677(5A)(D)(i).  The statute further explains that a subsidy is not *de jure* specific in certain enumerated instances, where the government "establishes objective criteria or conditions governing {} eligibility."  19 U.S.C. § 1677(5A)(D)(ii).  "Objective criteria or conditions" are defined as "criteria or conditions that are neutral and that do not favor one enterprise or industry over another."  19 U.S.C. § 1677(5A)(D).

Commerce correctly found that the additional three percent allocation is *de jure* specific, explaining that, "while the AAGEP and implementing rules do establish criteria, those criteria result in an express statutory limitation on which industries qualify for the additional allocation by setting thresholds that industries must meet in order to qualify."  Final I&D Memo at 23.  Plaintiff argues that the high trade intensity and emissions production criteria established by the AAGEP do not "explicitly limit" which industries or companies are eligible for the additional allocation.  Plaintiff Br. at 30-32.  Defendant responds that "the criteria included in the AAGEP and implementing rules establish that specific types of industries may benefit from the additional assistance from the allocation of additional {allowances}, while others do not."  Defendant Br. at 22-23.  Defendant is correct, and Commerce's *de jure* specific determination is supported by the record and in accordance with law.

We stress that the KETS program is not objective because it is not neutral.  The AAGEP Enforcement Decree establishes the criteria for eligibility, which permit trade intensive and/or high emissions production cost sectors to receive three percent more allowances than other participants in the program.  Final I&D Memo at 23.  By design, the program is limited to only certain industries.  In a provision titled "Criteria for Types of Business Eligible for Gratuitous Allocation,"

the AAGEP Enforcement Decree expressly limits the subsidy to "business{es} eligible for gratuitous allocation of all emissions permits," defined by those that are able to meet the specified trade intensity and emissions criteria.   GOK Carbon Emissions NSA QR at Exhibit CEP-1 (AAGEP Enforcement Decree, Art. 14).   The GOK reports that additional free allowances are limited to 37 subsectors, of which those comprising the "Industrial – general" sector, constitute more than half of the freely allocated allowances in 2019.   GOK Carbon Emissions NSA QR Translations at Exhibit CEP-8, Attachments 2-3.   The "Industrial" sector, which includes the Korean steel industry, is by far the largest recipient of free allowances, receiving more than 17 times more allowances than any non-energy sector in Korea.   *Id.* at Exhibit CEP-8, Attachment 3.

There are only a [



                                                                                                          ]. GOK

Carbon Emissions NSA QR at Exhibit CEP-7.   The [



                                                                    ].  *Id.*  As the largest recipient, the [



                                                                                                          ].

*Id.*  Clearly, the [                    ] of the [                                                ] of [

                                              ].  Even if it were designed in a way that would

appear objective, the criteria themselves ensure that the program cannot be neutral.   That is, these

criteria are neither objective nor neutral because, as this court reasoned in *BGH*, "the criteria must

not favor certain industries over others." *BGH*, 600 F.Supp.3d at 1264. Yet that is exactly how

the KETS program is structured. Thus, Commerce correctly determined that it is *de jure* specific.

## VI.    **CONCLUSION**

For the reasons detailed above, Defendant-Intervenor Nucor respectfully requests that the

court reject the arguments raised by Plaintiff Hyundai Steel and affirm aspects of Commerce's

Final Results in the 2019 administrative review of the CVD order on *HRS from Korea*.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Defendant-Intervenor Nucor Corporation*

Dated: May 19, 2023

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Nucor Corporation's Response to Hyundai Steel Company's Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 6,464 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

May 19, 2023
(Date)