IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HYUNDAI STEEL COMPANY,**<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>**UNITED STATES,**<br><br>　　　　　　Defendant,<br><br>　and,<br><br>**NUCOR CORPORATION,**<br><br>　　　　　　Defendant-Intervenor. | Before: Hon. Mark A. Barnett,<br>　　　　　Chief Judge<br><br>Court No. 22-00170 |

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE
FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

　　　　　　　　　　　　　　　　　　Alan H. Price, Esq.
　　　　　　　　　　　　　　　　　　Christopher B. Weld, Esq.
　　　　　　　　　　　　　　　　　　Derick G. Holt, Esq.
　　　　　　　　　　　　　　　　　　Theodore P. Brackemyre, Esq.

　　　　　　　　　　　　　　　　　　WILEY REIN LLP
　　　　　　　　　　　　　　　　　　2050 M Street, NW
　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　(202) 719-7000

　　　　　　　　　　　　　　　　　　*Counsel to Nucor Corporation*

**Dated: March 6, 2024**

Ct. No. 22-00170

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................. 1

III. ARGUMENT ...................................................................................................................... 3

    A.   Commerce's Financial Contribution Determination Is Supported By Substantial Evidence and In Accordance with Law ................................................. 3

    B.   Commerce's Benefit Determination Is Supported By Substantial Evidence and In Accordance with Law ................................................................... 7

    C.   Commerce's Specificity Determination Is Supported By Substantial Evidence and In Accordance with Law ................................................................... 9

IV.  CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BGH Edelstahl Siegen GmbH v. United States*,
   600 F.Supp.3d 1241 (Ct. Int'l Trade 2022) ...................................................................12, 13

**Statutes**

19 U.S.C. § 1677(5)(D)..............................................................................................................4

19 U.S.C § 1677(5)(D)(i)...........................................................................................................4

19 U.S.C § 1677(5A)(D)............................................................................................................9

**Regulations**

19 C.F.R. § 351.503(b) ..............................................................................................................7

19 C.F.R. § 351.503(b)(1)......................................................................................................7, 8

**Administrative Materials**

*Forged Steel Fluid End Blocks From the Federal Republic of Germany*,
   85 Fed. Reg. 31,454 (Dep't Commerce May 26, 2020) ..........................................................12

*Forged Steel Fluid End Blocks From the Federal Republic of Germany*,
   85 Fed. Reg. 80,011 (Dep't Commerce Dec. 11, 2020) .........................................................12

*Forged Steel Fluid End Blocks from India*,
   85 Fed. Reg. 79,999 (Dep't Commerce Dec. 11, 2020) ...........................................................6

*Granular Polytetrafluoroethylene Resin From India*,
   87 Fed. Reg. 3,765 (Dep't Commerce Jan. 25, 2022) ..............................................................5

Ct. No. 22-00170

I. **INTRODUCTION**

On behalf of the defendant-intervenor in this action, Nucor Corporation ("Defendant-Intervenor"), we hereby submit the following comments in support of the January 5, 2024 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Court Remand (Jan. 5, 2024), ECF. No. 54 ("Remand Determination"). Commerce continues to properly find that the Government of Korea's ("GOK") provision of additional emissions allowances ("KAUs") to certain participants in the Korea Emissions Trading System ("KETS") constitutes a countervailable subsidy. Specifically, consistent with the statute and the opinion and remand order issued by this Court on September 29, 2023, Commerce reasonably determines that the provision of additional KAUs by the GOK to Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") satisfies each element of the agency's countervailing duty ("CVD") analysis (*i.e.*, financial contribution, benefit, and specificity). The Court should reject arguments to the contrary made by Plaintiff in its comments in opposition to the Remand Determination, Pl.'s Comments on Commerce's Final Results of Redetermination Pursuant to Ct. Remand (Feb. 5, 2024), ECF No. 56 ("Plaintiff Opp. Cmts."), and the Court should sustain Commerce's determination as it is supported by substantial evidence and in accordance with law.

II. **BACKGROUND**

This litigation concerns Commerce's determination in the 2019 administrative review of the CVD order on *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*. Remand Determination at 2. During that review, Commerce found that the mandatory respondent Hyundai Steel received an additional three percent allocation of KAUs from the GOK through the KETS and, accordingly, the agency treated the extra allotment of KAUs as a countervailable subsidy. *Id.*

1

at 3. In doing so, Commerce determined that the additional KAUs provided to Hyundai Steel were a financial contribution in the form of revenue foregone. *Id.* Commerce further found that the additional three percent KAU allocation was *de jure* specific based on the international trade and production cost criteria governing which companies received the additional allotment of KAUs. *Id.* at 3-4. Based on the value of the additional three percent allocation, Commerce calculated a subsidy rate of 0.10 percent for Hyundai Steel with respect to this program. *Id.* at 4.

In the ensuing appeal, Plaintiff challenged Commerce's countervailability determination as to each of three elements of the KETS program—financial contribution, specificity, and benefit. *Id.* at 4-5. In its September 29, 2023 opinion, this Court remanded for Commerce to reconsider its financial contribution determination and to reconsider or further explain its specificity finding. Opinion and Order, *Hyundai Steel Co. v. United States*, Ct. No. 22-00170, Slip Op. 23-144 (Ct. Int'l Trade Sept. 29, 2023) at 11-18, 26-29 ("Opinion & Remand Order"). In particular, the Court instructed Commerce to reconsider the legal basis for its financial contribution determination, reasoning that foregoing revenue that is otherwise due "does not encompass revenue that could, but not necessarily would, have otherwise been collected by the relevant authority." *Id.* at 11. Regarding specificity, the Court instructed Commerce to reconsider or further explain its finding of *de jure* specificity, noting that it does not find the "international trade intensity" or "production cost" criteria governing the allocation of KAUs to necessarily establish *de jure* specificity under the statute. *Id.* at 27. With respect to its benefit analysis, the Court rejected Plaintiff's primary claim that Commerce ignored the burden imposed by the whole of the KETS and instructed the agency to reconsider its benefit determination, to the extent necessary, in light of Commerce's reconsideration of its financial contribution analysis. *Id.* at 20-23.

Ct. No. 22-00170

In its Remand Determination, Commerce continued to find that the GOK's provision of additional KAUs to Hyundai Steel constitutes a countervailable subsidy. Remand Determination at 2. Commerce reevaluated its financial contribution finding and, under protest, determined that the GOK provides a financial contribution in the form of a direct transfer of funds under section 771(5)(D)(i) of the Tariff Act of 1930 (the "Act"), instead of as revenue foregone. *Id.* at 6-11. On specificity, Commerce continued to find that the provision of additional KAUs was *de jure* specific under section 771(5)(D) of the Act, providing additional reasoning to support its conclusion that the trade intensity and cost eligibility criteria limit the companies and sectors that qualify under the program. *Id.* at 13-20. Regarding its benefit analysis, Commerce did not alter its benefit calculations, finding it appropriate to treat the amount of the additional KAUs provided to Hyundai Steel as the benefit as a direct transfer of funds. *Id.* at 11-13.

### III. ARGUMENT

#### A. Commerce's Financial Contribution Determination Is Supported by Substantial Evidence and in Accordance with Law

Consistent with the Court's instructions, in its Remand Determination, Commerce reevaluated its financial contribution finding and, under protest, determined that the GOK provides a financial contribution in the form of a direct transfer of funds under section 771(5)(D)(i) of the Act, instead of as revenue foregone. *Id.* at 6-11; Opinion & Remand Order at 11-18. Commerce reasoned that, "{a}lthough the GOK's allocation of additional free KAUs may not be a *traditional* transfer of 'funds' (*e.g.*, a cash grant), the fungibility and marketable nature of the KAUs makes the issuance of such allocations, nonetheless, analogous." Remand Determination at 9-10. Commerce's revisited financial contribution analysis is consistent with the record, the statute, and the agency's prior practice. Plaintiff's arguments to the contrary lack merit. Thus, the Court should sustain Commerce's financial contribution determination.

3

Ct. No. 22-00170

To start, Commerce properly characterized the financial contribution provided by the GOK through the provision of additional KAUs. *Id.* at 9-10. Section 771(5)(D)(i) of the Act defines a countervailable "financial contribution" as including "the direct transfer of funds, such as grants, loans, and equity infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees." 19 U.S.C. § 1677(5)(D). In the Remand Determination, Commerce made clear that it was treating the GOK's allocation of extra KAUs as "a direct transfer of funds under section 771(5)(D)(i) of the Act." Remand Determination at 9. Plaintiff claims that Commerce erroneously treated the additional KAUs like grants and that, in doing so, it exceeded its discretion. Plaintiff Opp. Cmts. at 2-3. Plaintiff is wrong.

As Plaintiff acknowledges, *see id.*, the statute does not limit the types of subsidies that can be treated as a direct transfer of funds, *see* 19 U.S.C § 1677(5)(D)(i). "{G}rants, loans, and equity infusions" are listed as non-exhaustive examples of "direct transfer{s} of funds" under section 771(5)(D)(i) of the Act. Plaintiff implies that Commerce somehow exceeded its discretion by "creat{ing} new types of financial contributions that are inconsistent with the examples in the statute." Plaintiff Opp. Cmts. at 2. Commerce did nothing of the sort. In fact, Commerce recognized in its Remand Determination that the additional KAUs allotted by the GOK are not identical to traditional grants, loans, or equity infusions. Remand Determination at 9, 29. Yet, Commerce found the extra KAUs to be "analogous" to the examples provided in the statute due to their "fungibility and marketable nature." *Id.* at 9-10. Accordingly, given that "{t}he record demonstrates that KAUs are market instruments with prices established for the purpose of trading KAUs both through the GOK-run auction and in private trading markets," it was not unreasonable for Commerce to consider the provision of free KAUs to be a direct transfer of funds. *Id.* at 10.

Ct. No. 22-00170

Moreover, Plaintiff misunderstands Commerce's comparison of the freely allocated KAUs to stocks. Plaintiff Opp. Cmts. at 2-3. In the Remand Determination, in finding the KAUs to be similar to other direct transfers of funds, Commerce noted that it has "previously explained that KAUs constitute an instrument of monetary value, *akin* to a stock," reasoning that they are "tradable on private markets and can be transferred among private parties via a contract." Remand Determination at 10. In other words, a KAU is like a stock in that it is a monetary instrument that can be traded among private parties. Plaintiff's effort to define a stock as a "security that represents the ownership of a fraction of the issuing corporation" does nothing to refute that point. Plaintiff Opp. Cmts. at 3. Commerce never claimed that KAUs are identical to stocks or that they serve the same financial purpose. Indeed, Commerce clarified that it considered KAUs to be a non-traditional form of direct transfer of funds. *See* Remand Determination at 9, 30. By analogizing to stocks and other financial instruments, Commerce simply provided additional explanation as to why it considered the allocation of KAUs to constitute a direct transfer of funds. *See id.* at 9-11.

Furthermore, Plaintiff fails to distinguish Commerce's financial contribution determination here from other proceedings where it has reached a similar conclusion. Plaintiff Opp. Cmts. at 4-5. As Commerce explained in its Remand Determination, Plaintiff ignores the fundamental similarity among these cases, *i.e.*, the government transfers an instrument of value to a recipient and Commerce treats that allocation as a direct transfer of funds. *See* Remand Determination at 31-32. For example, in the final determination of its CVD investigation on *Granular Polytetrafluoroethylene Resin from India* ("*PTFE Resin from India*"), Commerce treated a similarly designed renewable energy credit as "an instrument with monetary value," which it found to "constitute{} a financial contribution in the form of a direct transfer of funds." Issues and Decision Memorandum accompanying *Granular Polytetrafluoroethylene Resin From India*, 87

5

Ct. No. 22-00170

Fed. Reg. 3,765 (Dep't Commerce Jan. 25, 2022) (final affirm. countervailing duty deter. and final affirm. critical circumstances deter.) at 27.  Further, in its final determination in the CVD investigation on *Forged Steel Fluid End Blocks from India* ("*FEBs from India*"), Commerce found that similar credits "have monetary value, even if the amount of that value may not be known at the time of bestowal," and that the provision of such credits "constitutes a financial contribution in the form of a direct transfer of funds."  Issues and Decision Memorandum accompanying *Forged Steel Fluid End Blocks from India*, 85 Fed. Reg. 79,999 (Dep't Commerce Dec. 11, 2020) (final affirm. countervailing duty deter.) at 17-18.  As Commerce acknowledged, the facts of these proceedings are not identical to the present case, but the underlying rationale of its determinations in *PTFE Resin from India* and *FEBs from India* are analogous here.  Remand Determination at 10-11.  Plaintiff's claims to the contrary are unavailing.  *See* Plaintiff Opp. Cmts. at 4-5.

       Lastly, Plaintiff wrongly argues that Commerce's treatment of the GOK's additional KAU allocation as a direct transfer of funds "ignores the overall context" of the KETS. *Id.* at 5.  The Court rejected this same line of argument with respect to Commerce's benefit analysis, and it should do so again here.  Specifically, the Court explained that it "considers—and rejects—Hyundai Steels primary claim that Commerce impermissibly ignored the burdens imposed by the K-ETS program." Opinion & Remand Order at 20-21.  The Court further averred that the "statute addresses the circumstances in which environmental compliance is non-countervailable, and those circumstances are not present here nor does Hyundai Steel claim that they are present." *Id.* at 21.  The same logic applies to Commerce's financial contribution analysis.  Therefore, as Commerce reasonably found in its Remand Determination, "{a}ny burden of compliance with environmental laws does not undermine a finding that the GOK is providing a financial contribution here."  Remand Determination at 31.

Ct. No. 22-00170

> **B.  Commerce's Benefit Determination Is Supported by Substantial Evidence and in Accordance with Law**

In accordance with the Court's opinion, Commerce properly treated the additional KAUs allocated to Hyundai Steel as the benefit provided as a direct transfer of funds and, thus, the agency did not alter its benefit calculations in the Remand Determination. *Id.* at 11-13.  Given its revised financial contribution determination, Commerce relied on its general other subsidies benefit regulation, instead of the exception to that rule, to find that a benefit was provided. *See id.* at 12; 19 C.F.R. § 351.503(b).  Specifically, Commerce found that 19 C.F.R. § 351.503(b)(1) applies, which states that a "benefit is conferred 'where a firm pays less for its inputs (*e.g.*, money, a good, or a service) than it would otherwise pay in the absence of the government program, or receives more revenues than it otherwise would earn.'"  Remand Determination at 12.  Commerce reasonably concluded that because the "GOK charged certain entities no cost for an additional KAU allocation that has a market value," a countervailable benefit was provided. *Id.*  Plaintiff's arguments otherwise are misplaced, and the Court should sustain Commerce's benefit analysis.

As an initial matter, Plaintiff wrongly claims that Commerce unlawfully treated the KAUs provided to Hyundai Steel as "inputs" under 19 C.F.R. § 351.503(b)(1).  Plaintiff Opp. Cmts. at 6-7.  Plaintiff asserts: "'Inputs' are defined as "something that is put in."'  *Id.* at 6.  In doing so, Plaintiff implies that because KAUs are not used in the production process of subject merchandise they are not inputs that can be considered as part of a benefit provided under 19 C.F.R. § 351.503(b)(1). *See id.* at 6-7.  Plaintiff is mistaken because, akin to "money," KAUs facilitate the production of subject merchandise.  In fact, in the Remand Determination, Commerce thoroughly rejected Hyundai Steel's argument that KAUs are not money, reasoning that KAUs represent a "tradable monetary instrument with an underling value {that} can be considered akin to money."  Remand Determination at 32.  Plaintiff fails to rebut this argument, reiterating instead

7

Ct. No. 22-00170

the same arguments it made in the context of Commerce's financial contribution determination regarding why KAUs are not a financial instrument. *See* Plaintiff Opp. Cmts. at 7. These arguments remain unconvincing, as Commerce has repeatedly and reasonably determined that the extra KAUs allotted by the GOK function as a financial instrument akin to money.

Additionally, Plaintiff incorrectly asserts that Commerce based its benefit determination on Hyundai Steel receiving more revenue that it would have otherwise earned. *Id.* Plaintiff misconstrues Commerce's analysis. In the Remand Determination, Commerce found that a countervailable benefit was provided because additional KAUs were provided by the GOK at no cost. Remand Determination at 12. In other words, the KAUs were provided to Hyundai Steel for less than they would have paid, absent this subsidy program. The latter half of Commerce's other subsidies benefit regulation, which discusses where a company "receives more revenues than it otherwise would earn," does not appear to have been the basis of the agency's determination in this case. *See* 19 C.F.R. § 351.503(b)(1); Remand Determination at 11-13, 32-33. Rather, Commerce's reference to revenue otherwise earned in the Remand Determination is made entirely in response to Hyundai Steel's own argument, to which the agency notes that the "basis for Hyundai Steel's claim, however, is unclear" as "the company receives an allotment in excess of that received by other participating companies, through the preferential 100 percent allocation." Remand Determination at 32.

Plaintiff also advances the same previously rejected contentions about the context of the KETS, claiming that the program as a whole increases the company's costs and thus the extra allotment of KAUs cannot constitute a benefit. Plaintiff Opp. Cmts. at 7-8. As noted above, the Court has repeatedly rejected this line of argument, and it should do so here as well. *See* Opinion & Remand Order at 20-21. Specifically, as this Court reasoned: "Hyundai Steel's emphasis on

8

contextualizing any benefit within a governmental action's overall burden . . . overlooks that Commerce routinely countervails benefits that reduce otherwise greater liabilities." *Id.* at 22-23. The same rationale still applies, and there is no merit to Plaintiff's argument.

### C. Commerce's Specificity Determination Is Supported by Substantial Evidence and in Accordance with Law

Consistent with the Court's opinion, in the Remand Determination, Commerce reconsidered its specificity determination and provided additional explanation in support of its finding that the provision of additional KAUs is *de jure* specific within the meaning of the statute. Remand Determination at 13-20; Remand Opinion & Order at 26-29. Commerce's bolstered specificity analysis is supported by the record, the statute, and prior cases. Plaintiff's arguments to the contrary are misplaced, and the Court should sustain Commerce's specificity determination.

To start, Commerce correctly applied both subparagraphs (i) and (ii) of section 771(5A)(D) of the Act, and Plaintiff is wrong to suggest that the agency failed to establish *de jure* specificity under section 771(5A)(D)(i) of the Act. *See* Remand Determination at 13-20; Plaintiff Opp. Cmts. at 9-11. Plaintiff claims that "Commerce has put the cart before the horse by structuring its analysis so that if the safe harbor criteria are not met then a subsidy is *de jure* specific." Plaintiff Opp. Cmts. at 9. Plaintiff mischaracterizes Commerce's reasoning. In the Remand Determination, Commerce made clear that it found that the extra allotment of KAUs provided by the GOK was *de jure* specific, consistent with subparagraph (i), and then separately that the safe harbor criteria were not met, in accordance with subparagraph (ii). *See* Remand Determination at 13-20; 19 U.S.C § 1677(5A)(D).

To further support its specificity determination, Commerce described in detail the "international trade intensity" and "production cost" criteria provided in the Act on the Allocation and Trading of Greenhouse Gas Emissions Permits ("AAGEP"), which is the Korean law

9

Ct. No. 22-00170

governing the allocation of KAUs to particular sectors and companies. Remand Determination at 14-17. Commerce also analyzed the process through which the Korean Ministry of the Environment ("MOE") determines which industrial sectors qualify for additional KAUs. *Id.* at 18-19, 33-34. While this discussion, at times, addressed the relevant safe harbor criteria, Commerce's reasoning also supported its *de jure* specificity determination under section 771(5A)(D)(i) of the Act. *See id.* at 14-19. Thus, Commerce's analysis in the Remand Determination was not limited to section 771(5A)(D)(ii) of the Act, as Plaintiff argues. Rather, Commerce provided substantial, additional reasoning in support its determination that this program is *de jure* specific. As discussed in turn below, the Court should find these explanations to be reasonable and sufficient, and it should reject Plaintiff's arguments otherwise.

First, Commerce's assessment of the international trade and production criteria in the AAGEP further supports its determination that the extra allotment of KAUs is *de jure* specific. Remand Determination at 15-17. Most notably, Commerce explained that, under the AAGEP, "the criteria for the additional KAU allocation . . . inherently favor{} certain subsectors, including those covering primary steel producers like Hyundai Steel, over other subsectors." *Id.* at 15. Commerce detailed that the "favored subsectors, by their nature" have more emissions-intensive production processes and are more dependent on international trade than other subsectors. *Id.* In doing so, Commerce cited to a press release from the GOK addressing the proposed allocation of KAUs for this compliance period, in which the GOK specifies that "{t}he steel, semiconductor, display, electricity & electronics, motor vehicles, shipbuilding and cement industries, etc. will be granted with emission permits free of charge as before." Letter from Yoon & Yang LLC to Sec'y Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Additional Translations Accompanying GOK's Carbon Emissions New Subsidy*

10

Ct. No. 22-00170

*Allegation Questionnaire Response* (May 20, 2021), P.R. 77 at Exhibit CEP-8, p. 2 ("GOK Carbon Emissions NSA QR Translations"). *See also* Remand Determination at 15, n.56.

As Commerce recognized, that press release also describes that additional free allowances are limited to 37 subsectors, of which those comprising the "Industrial – general" sector, constitute more than half of the freely allocated allowances in 2019. *See* Remand Determination at 15-16; GOK Carbon Emissions NSA QR Translations at Exhibit CEP-8, Attachments 2-3. Further, the "Industrial" sector, which includes the Korean steel industry, is by far the largest recipient of free allowances, receiving more than 17 times more allowances than any non-energy sector in Korea. GOK Carbon Emissions NSA QR Translations at Exhibit CEP-8, Attachment 3. Put simply, as Commerce explained, the record of this proceeding is clear that the steel industry is one of the industries enumerated as receiving the extra allotment of KAUs.

Second, Commerce's examination of the MOE's process for determining which industrial sectors receive additional KAUs further supports the agency's *de jure* specificity finding. Remand Determination at 18-19. Commerce pointed to the fact that the MOE "pre-selects" which industry subsectors qualify for the additional KAU allotment in "defined intervals." *Id.* at 18. That is, as the agency concluded, "the MOE imposes the 'international trade intensity' and 'production cost' qualifying criteria in an explicit manner, on a recurring basis," and consequently "{s}uch a limitation on eligibility for the additional three percent KAU allocation constitutes *de jure* specificity within the meaning of the Act." *Id.* Still, Plaintiff claims that, because the MOE applies the specified criteria to determine which subsectors are selected for additional KAU allocations, the MOE's process is not limiting. *See* Plaintiff Opp. Cmts. at 10. This argument fails. As Commerce responded in the Remand Determination, "{t}here is no basis to conclude that a law must enumerate specific subsectors by the formal name of the sectoral division in order to

11

constitute a *de jure* specific law." Remand Determination at 34. Indeed, this is especially so in the present case, where the record shows that the GOK has called out the steel industry by name as a sector that it intends to provide favorable treatment through this program. *See* GOK Carbon Emissions NSA QR Translations at Exhibit CEP-8, p.2.

Additionally, Commerce reasonably analogized to this Court's decision in *BGH Edelstahl Siegen GmbH v. United States* ("*BGH*"). Remand Determination at 18-19; *BGH Edelstahl Siegen GmbH v. United States*, 600 F.Supp.3d 1241, 1262-64 (Ct. Int'l Trade 2022). Plaintiff argues that the *BGH* litigation is not analogous to the current proceeding. *See* Plaintiff Opp. Cmts. at 11. However, addressing the Court's opinion, Commerce properly compared its specificity finding to the proceeding underlying *BGH*, explaining why reaching a different determination in this case would "create{} a potential loophole whereby a foreign government could thwart investigating authorities and administer programs that would evade capture by the CVD law through a simple rephrasing of the implementing legislation." Remand Determination at 19; Opinion & Remand Order at 24. As Commerce reasoned, in that case, the European Union ("EU") did not specify which companies were on its carbon leakage list, but rather provided trade and cost criteria to determine which companies qualified for the list. *See BGH*, 600 F.Supp.3d at 1262-63; Preliminary Decision Memorandum accompanying *Forged Steel Fluid End Blocks From the Federal Republic of Germany*, 85 Fed. Reg. 31,454 (Dep't Commerce May 26, 2020) (prelim. affirm. countervailing duty deter., and alignment of final deter. with final antidumping duty deter.) at 26. Yet, there, Commerce concluded that the EU emissions trading system "specifically establishes a distinct set of rules for the companies on the carbon leakage list that is unique from the set of rules for other companies under this program." Issues and Decision Memorandum accompanying *Forged Steel Fluid End Blocks From the Federal Republic of Germany*, 85 Fed.

Ct. No. 22-00170

Reg. 80,011 (Dep't Commerce Dec. 11, 2020) (final affirm. countervailing duty deter.) at 49. The KETS program is no different, and Commerce correctly continued to point to the *BGH* case to support its Remand Determination.

As a final matter, Commerce sufficiently showed that the safe harbor criteria do not apply. Remand Determination at 13-15, 35. In arguing otherwise, Plaintiff sticks to its claim that since "any sector could qualify if they meet the criteria," then the criteria are necessarily objective and must satisfy section 771(5A)(D)(ii) of the Act. Plaintiff Opp. Cmts. at 12-13. However, as Commerce noted in the Remand Determination, "{t}his characterization misconstrues the nature of the program." Remand Determination at 35. The very nature of the international trade and production criteria determine which subsectors qualify. If the criteria were designed differently, then different subsectors would receive additional KAUs. Thus, the program is limited to the subsectors that qualify based on the chosen trade and production criteria. *See id.* at 35-36.

Ct. No. 22-00170

## IV. CONCLUSION

For the reasons above, Defendant-Intervenor respectfully requests that the Court reject the arguments raised by Plaintiff and sustain Commerce's decision in the Remand Determination to continue to countervail the subsidies received by Hyundai Steel from the provision of additional KAUs by the GOK through the KETS program.

          Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

***Counsel to Nucor Corporation***

Dated: March 6, 2024

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 3,979 words.

  /s/ Alan H. Price
(Signature of Attorney)

  Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

  March 6, 2024
(Date)