**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |
|---|---|
| HYUNDAI STEEL COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> NUCOR CORPORATION, ) <br> ) <br> Defendant-Intervenor. ) | Court No. 22-00170 |

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY <br> Director |
|  | TARA K. HOGAN <br> Assistant Director |
| OF COUNSEL: <br> HEATHER HOLMAN <br> Attorney <br> U.S. Department of Commerce <br> Office of the Chief Counsel for Trade <br>    Enforcement and Compliance <br> 1401 Constitution Avenue, NW <br> Washington, D.C. 20230 <br> Tel: (202) 779-3820 <br> Email: Heather.Holman@trade.gov | SOSUN BAE <br> Senior Trial Counsel <br> U.S. Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> P.O. Box 480 <br> Ben Franklin Station <br> Washington D.C. 20044 <br> Tel: (202) 305-7568 <br> Fax: (202) 305-7644 <br> Email: Sosun.Bae@usdoj.gov |
| September 30, 2024 | Attorneys for Defendant |

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant, )<br>)<br>and )<br>)<br>NUCOR CORPORATION, )<br>)<br>Defendant-Intervenor. )<br>) | Court No. 22-00170 |

## **ORDER**

Upon consideration of the remand redetermination, the comments filed by the parties, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand results are sustained in all respects, and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____  
New York, NY

_____  
CHIEF JUDGE

## TABLE OF CONTENTS

**PAGE**

DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION ............... 1

BACKGROUND .................................................................................................................. 1

    I.     Administrative Determination Under Review ......................................................... 1

    II.    The Court's First Remand Order............................................................................. 2

    III.   Commerce's First Remand Redetermination ......................................................... 2

    IV.   The Court's Second Remand Order ....................................................................... 3

    V.    Commerce's Second Remand Redetermination..................................................... 3

ARGUMENT ........................................................................................................................ 3

    I.     Standard Of Review ................................................................................................ 3

    II.    Commerce's *De Facto* Specificity Determination Is Supported By Substantial Evidence And In Accordance with Law................................................................. 4

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**                                                 **PAGE(S)**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
 61 F. Supp. 3d 1306, 1342-43 (Ct. Int'l Trade 2015) .................................................................. 10

*Consolo v. Fed. Mar. Comm'n*,
 383 U.S. 607 (1996) ...................................................................................................................... 4

*Gov't of Quebec v. United States*,
 105 F. 4th 1359 (Fed. Cir. 2024) ............................................................................................... 8, 9

*Hyundai Steel Co. v. United States*,
 659 F.Supp. 3d 1327 (Ct. Int'l Trade 2023) .................................................................................. 2

*MacLean-Fogg Co. v. United States*,
 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ................................................................................. 4

*Mosaic Co. v. United States*,
 659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) .............................................................................. 6, 7

*Nucor Corp. v. United States*,
 494 F. Supp. 3d 1377 (Ct. Int'l Trade 2021) ............................................................................... 10

*Wilmar Trading PTE Ltd. v. United States*,
 466 F. Supp. 3d 1334 (Ct. Int'l Trade 2020) ............................................................................... 10

**STATUTES**

19 U.S.C. § 1677(5)(D)(i) ............................................................................................................... 2

19 U.S.C. § 1677(5A)(D)(iii) .................................................................................................. 3, 4, 7

19 U.S.C. § 1677(5A)(D)(iii)(I) ............................................................................................. passim

**REGULATIONS**

19 C.F.R. § 351.502(a) ................................................................................................................... 4

19 C.F.R. § 351.503(b)(1) .............................................................................................................. 2

**ADMINISTRATIVE DETERMINATIONS**

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea*,
 87 Fed. Reg. 66,648 (Dep't of Commerce Nov. 4, 2022) ............................................................. 9

*Certain Corrosion Resistant Steel Products from the Republic of Korea*,
    86 Fed. Reg. 37,740 (Dep't of Commerce July 16, 2022) ............................................................ 9

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea*,
    87 Fed. Reg. 27,570 (Dep't of Commerce May 9, 2022) ............................................................. 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    81 Fed. Reg. 78,990 (Dep't of Commerce Dec. 8, 2020) ............................................................ 1

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> NUCOR CORPORATION, ) <br> ) <br> Defendant-Intervenor. ) | Court No. 22-00170 |

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to plaintiff Hyundai Steel Company's comments concerning the Department of Commerce's second remand determination, filed in accordance with this Court's order in *Hyundai Steel Company v. United States*, Court No. 22-00170, Slip Op. 24-55 (Ct. Int'l Trade 2024) (Second Remand Order). *See* Hyundai Steel Comments, ECF No. 66; Final Results of Redetermination Pursuant to Court Remand (Second Remand Results). We respectfully request that the Court sustain the remand results and enter judgment for the United States.

**BACKGROUND**

I.   Administrative Determination Under Review

In 2020, Commerce initiated an administrative review of the countervailing duty order covering certain hot-rolled steel flat products from Korea. *See Initiation of Antidumping and*

*Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 78,990 (Dep't of Commerce Dec. 8, 2020). In its final results, Commerce determined that Hyundai Steel had received countervailable subsidies from the Korean government with regard to Korea's carbon emissions credit program (K-ETS program). *See Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 87 Fed. Reg. 27,570 (Dep't of Commerce May 9, 2022) (final results) (P.R. 133), and accompanying Issues and Decision Memorandum (IDM) (P.R. 132). Specifically, Commerce found that Hyundai Steel's receipt of an additional allocation of Korean Allowance Units (KAUs)—*i.e.*, emissions permits—constituted a financial contribution in the form of revenue foregone. *See id.* at 17-24.

II.     The Court's First Remand Order

Hyundai Steel filed a complaint at this Court. On September 29, 2023, the Court remanded for Commerce to reconsider the basis for its financial contribution determination, reconsider or further explain its finding of *de jure* specificity, and, if necessary, reconsider the regulatory basis for its benefit determination. *See Hyundai Steel Co. v. United States*, 659 F. Supp. 3d 1327 (Ct. Int'l Trade 2023).

III.    Commerce's First Remand Redetermination

On remand, Commerce reconsidered—under respectful protest—its financial contribution determination, finding that the additional KAUs available under the K-ETS program constitute a financial contribution in the form of a direct transfer of funds pursuant to 19 U.S.C. §1677(5)(D)(i). *See* Final Results of Redetermination Pursuant to Court Remand at 6-11 (First Remand Results), ECF No. 54-1. Commerce also explained that, pursuant to 19 C.F.R. § 351.503(b)(1), a benefit was conferred because the Korean government "charged certain entities no cost for an additional KAU allocation that has a market value." *Id.* at 12. Finally,

Commerce provided further explanation for its finding that the provision of the additional KAU allocation is *de jure* specific. *Id.* at 13-19.

IV. <u>The Court's Second Remand Order</u>

On May 2, 2024, the Court issued another order, sustaining Commerce's findings on financial contribution and benefit, but remanding to Commerce to further explain or reconsider its specificity finding. *See* Second Remand Order at 27-28. Specifically, the Court stated that "Commerce may consider whether the record supports a finding that 'there are reasons to believe that {the} subsidy may be specific as a matter of fact,' consistent with the provisions of 19 U.S.C. § 1677(5A)(D)(iii){,}" *i.e.*, conduct a *de facto* specificity analysis. *Id.* at 27.

V. <u>Commerce's Second Remand Redetermination</u>

On its second remand, Commerce—under respectful protest—revised its specificity determination, finding the program to be *de facto* specific. *See generally* Second Remand Results. Commerce acknowledged the statutory factors, and found that the number of companies receiving the additional KAU allocation (*i.e.* a 100 percent KAU allocation) under the K-ETS program was only 504 out of a total 787,438 companies operating within the Korean government's jurisdiction during the period of review—less than one percent. *Id.* at 8, 13-14. Because the number of recipients of the subsidy were limited in number, Commerce found the program to be *de facto* specific. *Id.*; *see also* 19 U.S.C. § 1677(5A)(D)(iii)(I) ("Where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if . . . {t}he actual receipts of the subsidy . . . are limited in number.").

**ARGUMENT**

I. <u>Standard Of Review</u>

In remand proceedings, the Court will sustain Commerce's determinations if they are "in

3

accordance with the remand order," are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015); 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

II.   Commerce's *De Facto* Specificity Determination Is Supported By Substantial Evidence And In Accordance with Law

Consistent with the Court's order, Commerce reconsidered its specificity determination and determined that the additional KAU allocation under the K-ETS program was *de facto* specific pursuant to 19 U.S.C. §1677(5A)(D)(iii)(I) because the actual recipients of the subsidy were limited in number. This conclusion is lawful, supported by substantial evidence, and effectuates the purpose of a specificity determination.

A domestic subsidy is specific as a matter of fact (*i.e. de facto* specific) if one or more of the following factors exist:

> (I)  The actual recipients of the subsidy, whether considered on an enterprise or industry specific basis, are limited in number.
>
> (II) An enterprise or industry is a predominant user of the subsidy.
>
> (III) An enterprise or industry receives a disproportionately large amount of the subsidy.
>
> (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

19 U.S.C. §1677(5A)(D)(iii). Commerce analyzes these factors in the order in which they appear, and "if a single factor warrants a finding of specificity, {Commerce} will not undertake further analysis." 19 C.F.R. § 351.502(a). The Statement of Administrative Action, which

4

Congress has mandated as an authoritative expression concerning the interpretation and application of the Tariff Act, expresses that the purpose of the specificity test is "to winnow out only those foreign subsidies which truly are broadly available and widely used throughout an economy." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994) at 929 (SAA).

Commerce compared the number of companies receiving the additional KAU allocation (504) with the number of companies operating under the jurisdiction of the Korean government (787,438), determining that the recipients of the additional KAU allocation constitute an extremely a small percentage of the companies operating in the Korean economy, and were thereby limited limited in number. *See* Second Remand Results at 8, 14. Because Commerce found that the recipients of the subsidy were limited in number, it deemed the requirements of section 1677(5A)(D)(iii)(I) satisfied; accordingly, Commerce was not required to determine whether any of the other statutory factors were met. *See* 19 U.S.C. §1677(5A)(D)(iii)(I); 19 C.F.R. § 351.502(a).

Commerce's comparison between the 504 recipients of the additional KAU allocation and the 787,438 total companies operating in the Korean company was appropriate because it effectuated the purpose of the statute, which, as the SAA directs, is to winnow out subsidies "which are truly broad and widely used throughout an economy." SAA at 929. Nonetheless, Hyundai Steel claims that the appropriate comparator to those 504 companies is not the total number of companies operating in Korea, but rather only the pool of companies that qualify for the K-ETS program and receive any allocation under the program. *See* Hyundai Steel Comments at 2-3.

Hyundai Steel's suggested comparison would run counter to the purpose of the specificity test, which is to "avoid the imposition of countervailing duties in situations where, because of the widespread availability ***and use*** of a subsidy, the benefit of the subsidy is spread throughout an economy."  SAA at 930 (emphasis in original).  Comparing the number of companies receiving the additional KAU allocation with all companies operating in the economy establishes that the additional allocation does not have a "widespread use" throughout that economy.  Comparing the companies receiving the additional KAU allocation only to other companies in the K-ETS program would not winnow out only those subsidies which are widely used throughout the Korean economy, because the only companies eligible are those with 125,000 tons of carbon equivalent emissions per year, and those with a place of business with 25,000 tons of carbon equivalent emissions per year, measured over the past three years.  *See* Letter, "GOK's Carbon Emissions New Subsidy Allegation Questionnaire Response" (GOK NSA QR) at SQA-1 p.8 (May 17, 2021) (P.R. 76).  In other words, the K-ETS program itself is not widely available or truly broad, so using all K-ETS recipients as a comparator would not aid in establishing whether the subsidy to those companies receiving an additional allocation is specific.  Because comparing the number of recipients of the addition allocation with all entities operating in Korea comports with the statute's purpose, whereas Hyundai Steel's suggestion fails to effectuate Congress's intent, the Court should not heed Hyundai Steel's contentions.

Hyundai Steel relies on *Mosaic Co. v. United States*, 659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) to support its assertions, but such reliance is misplaced.  In that case, the Court found that Commerce had erred in comparing the total number of corporate taxpaying recipients of tax penalty relief (8,761), with the total number of corporate taxpayers (262,165) to determine that the users of the subsidy were limited in number.  *See Mosaic*, 659 F. Supp. 3d at 15.  *Mosaic*

is distinguishable. First, the number of recipients of the subsidy here is far smaller than in *Mosaic*, both by absolute number and percentage. In *Mosaic*, the 8,761 recipients out of 262,165 total corporate taxpayers represented a 3.34 percent limitation on the subsidy. *See Mosaic*, 659 F. Supp. 3d at 1314-15. By contrast, the 504 recipients of the additional KAU allocation under the K-ETS out of a total of 787,438 businesses in Korea represents only a 0.06 limitation on the subsidy. *See* Second Remand Results at 15. As explained in the SAA, "where the number of enterprises or industries using a subsidy is not large, the first factor {of 19 U.S.C. §1677(5A)(D)(iii)} ***alone*** would justify a finding of specificity." SAA at 931 (emphasis added). Certainly, the 504 recipients of the additional KAU are much more limited in number than the recipients of the tax penalty relief in *Mosaic*, and should be considered "not large" by any stretch.

Second, Hyundai Steel argues that, like in *Mosaic*, Commerce did not compare the recipients of the additional KAU allocation to "the universe or composition of the group of potential recipients." Hyundai Steel Remand Comments at 6 (citing *Mosaic*, 659 F. Supp. 3d at 1315). However, because participation in the K-ETS program is mandatory for all Korean businesses fulfilling certain criteria, the appropriate "universe of potential recipients" who could meet the criteria to become eligible for the additional KAU allocation is all Korean businesses.

Third, unlike in *Mosaic*, where the Court found that Commerce did not give effect to the "on an industry or enterprise basis" language in 1677(5A)(D)(iii)(I) because the program in that case was "a common, ordinary tax administration program" and the penalty relief program at issue was "available not only to all industries and sectors but to all types of taxpayers{;}" *Mosaic*, 659 F. Supp 3d. at 1315; here, the K-ETS program is not available to all industries and sectors but rather limited to companies meeting a certain emissions thresholder. *See* Second

7

Remand Results at 16. The 100 percent KAU allocation is even further limited to certain sectors based on trade intensity and production cost criteria. *See id.* As such, Commerce's comparison of the number of additional KAU recipients to the number of businesses operating in Korea illustrates that actual recipients of the subsidy are limited in number on an "enterprise basis." *Mosaic* is factually distinct and should not persuade the Court here.

 Rather, the Court should be guided by the recent decision by the Court of Appeals for the Federal Circuit case in *Government of Quebec v. United States* 105 F. 4th 1359 (Fed. Cir. 2024). In that case, the Federal Circuit affirmed Commerce's *de facto* specificity finding for a program that compared the total number of corporate tax credit recipients (4,930) with the total number of corporate tax filers (387,949)—a 1.27 percent limitation on the subsidy. *See Gov't of Quebec*, 659 F. 4th at 1375. Here, there is an even smaller percentage of recipients of the additional KAU allocation under the K-ETS when compared to all businesses in Korea. Hyundai Steel claims that *Gov't of Quebec* is distinguishable because, in that case, Commerce compared the recipients of tax-related subsidy programs to the total amount of tax filers, whereas here Commerce could not undertake its comparison because most of the businesses in Korea are not subject to the K-ETS program. *See* Hyundai Steel Comments at 8. But Hyundai Steel's acknowledgement that most businesses in Korea are not subject to the K-ETS program only drives home the conclusion that the subsidy at issue is not broad or widely available. Like most subsidy programs, the additional allocation under the K-ETS program has criteria that limits its usage to a subset of the economy. Recognizing this does not mean Commerce should artificially narrow its interpretation of "the economy" in assessing whether the program "truly {is} broadly available and widely used throughout an economy." *Gov't of Quebec*, 105 F. 4th at 1375; SAA at 929.

8

Hyundai Steel claims that the comparison in *Gov't of Quebec* is logically consistent, whereas Commerce's comparison was not. But this ignores the similarities between the two situations. As with the subsidy program at issue in *Gov't of Quebec*, where there were certain criteria imposed on the recipients of the subsidy, including "engaging in a qualified business and having received the required certification," here, the additional KAU allocation is subject to strict criteria—namely, having a certain level of carbon equivalent emissions per year. *See Gov't of Quebec*, 105 F. 4th at 1366; GOK NSA QR at SQA-1 pg. 8 (P.R. 76). Additionally, in *Gov't of Quebec*, Commerce compared the subsidy recipients to all businesses who file taxes in the jurisdiction; similarly, here Commerce compared the subsidy recipients to all businesses operating in the Korean government's jurisdiction. *See Gov't of Quebec*, 105 F. 4th at 1366; Second Remand Results at 7-9. Accordingly, any differences in the facts of *Gov't of Quebec* are not meaningful.

Commerce's comparison method here is consistent with its practice in previous administrative proceedings. Hyundai Steel argues that the comparisons in those proceedings were logically consistent, whereas Commerce's comparison here "fail{s} to logically show whether the actual recipients of the subsidy are limited in number." Hyundai Steel Comments at 7, 9 (citing *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 87 Fed. Reg. 66,648 (Dep't of Commerce Nov. 4, 2022), and accompanying IDM (preliminary results) (*Hot-Rolled Steel from Korea*); *Certain Corrosion Resistant Steel Products from the Republic of Korea*, 86 Fed. Reg. 37,740 (Dep't of Commerce July 16, 2022), and accompanying IDM (preliminary results) (*CORE from Korea*). For the same reasons discussed above, *Gov't of Quebec*, this argument does not persuade.

9

In *Hot-Rolled Steel from Korea*, Commerce countervailed an acquisition tax exemption where "corporate properties are acquired via an originating company transferring properties to a new company, where the shareholders are the same and the new company does not pay any value for the acquisition of properties transferred to it." *Hot-Rolled Steel* PDM at 17. Following Hyundai Steel's logic would have had Commerce limit the comparator to, for example, only companies with a similar structure, or companies that acquired properties during the period of review. Rather, Commerce found that the recipients of that subsidy were limited in number when compared to the total number of corporate tax filers. Similarly, in *CORE from Korea*, Commerce found that a program that allowed a tax deduction for facilities constructed to preserve the environment had a limited number of recipients when compared to total corporate tax filers. *See CORE from Korea* PDM at 22. Here, comparing the recipients of the K-ETS additional KAU allocation to only those other companies in the K-ETS program would not indicate whether the additional KAU subsidy was widely used throughout the Korean economy.

This Court has sustained Commerce's method of finding a program *de facto* specific when its recipients are limited in number when compared to the entire economy. *See, e.g. Nucor Corp. v. United States*, 494 F. Supp. 3d 1377, 1383 (Ct. Int'l Trade 2021) (holding that, where only 25 companies used a program when compared to all companies operating in the Korean economy, the program participants were limited in number); *Wilmar Trading PTE Ltd. v. United States*, 466 F. Supp. 3d 1334, 1358 (Ct. Int'l Trade 2020) (holding that the 14 industries benefitting from an input provided for less than adequate remuneration were limited in number when compared to all industries in the economy of Indonesia); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306, 1342-43 (Ct. Int'l Trade 2015)

(holding that the eight industries that received an input for LTAR were limited in number when compared to all industries in the Turkish economy).

Hyundai Steel claims that these cases are inapposite because they concern different types of financial contributions than that at issue here. *See* Hyundai Steel Remand Comments at 10. But the financial contribution prong of a countervailing duty analysis is completely independent from the specificity prong, and the type of financial contribution at issue has no bearing on the appropriate comparators to select in determining whether the recipients of a subsidy are limited in number. Hyundai Steel has failed to demonstrate that Commerce acted unlawfully in conducting its *de facto* specificity analysis, or that its determination was unsupported by substantial evidence. Accordingly, the Court should sustain the second remand results.

## CONCLUSION

For these reasons, we respectfully request that this Court sustain Commerce's second remand redetermination and enter final judgement in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:
HEATHER HOLMAN
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
   Enforcement and Compliance

s/Sosun Bae
SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

11

1401 Constitution Avenue, NW  
Washington, D.C. 20230  
Tel: (202) 779-3820  
Email: Heather.Holman@trade.gov  

P.O. Box 480  
Ben Franklin Station  
Washington D.C. 20044  
Tel: (202) 305-7568  
Fax: (202) 305-7644  
Email: Sosun.Bae@usdoj.gov  

September 30, 2024

Attorneys for Defendant

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant this Court's May 2, 2024 order, ECF No. 61, that this brief contains 2,995 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/Sosun Bae
Sosun Bae
