IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HYUNDAI STEEL COMPANY,**<br><br>          **Plaintiff,**<br><br>      **v.**<br><br>**UNITED STATES,**<br><br>          **Defendant,**<br><br>      **and,**<br><br>**NUCOR CORPORATION,**<br><br>          **Defendant-Intervenor.** | Before: Hon. Mark A. Barnett,<br>          Chief Judge<br><br>Court No. 22-00170 |

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE**
**FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

                                            Alan H. Price, Esq.
                                            Christopher B. Weld, Esq.
                                            Derick G. Holt, Esq.
                                            Theodore P. Brackemyre, Esq.

                                            WILEY REIN LLP
                                            2050 M Street, NW
                                            Washington, DC 20036
                                            (202) 719-7000

                                            *Counsel to Nucor Corporation*

**Dated: September 30, 2024**

Ct. No. 22-00170

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ....................................................................................................................... 1

III.  CONCLUSION ................................................................................................................... 6

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Gov't of Quebec v. United States*,
   105 F.4th 1359 (Fed. Cir. 2024) ................................................................................ 2, 3, 4, 6

*Hyundai Steel Co. v. United States*,
   No. 22-00170, slip op. 24-55 (May 2, 2024) ....................................................................... 1

*Mosaic Co. v. United States*,
   659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) ................................................................... 4, 5

*Royal Thai Gov't v. United States*,
   436 F.3d 1330 (Fed. Cir. 2006) .......................................................................................... 6

**Administrative Materials**

*Certain Hot-Rolled Steel Flat Products From the Republic of Korea*,
   87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) ........................................................ 5

Ct. No. 22-00170

## I. INTRODUCTION

On behalf of the defendant-intervenor in this action, Nucor Corporation ("Defendant-Intervenor"), we hereby submit the following comments in support of the July 31, 2024 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand (July 31, 2024), ECF No. 63 ("Remand Determination"). Commerce continues to properly find that the Government of Korea's ("GOK") provision of additional emissions allowances ("KAUs") to certain participants in the Korea Emissions Trading System ("KETS") constitutes a countervailable subsidy. Namely, Commerce correctly determines that the GOK's provision of KAUs under the KETS program constitutes a *de facto* specific subsidy. In this regard, the Remand Determination is consistent with the Court's May 2, 2024 opinion. *Hyundai Steel Co. v. United States*, No. 22-00170, slip op. 24-55 (May 2, 2024), ECF No. 61 ("Slip Op. 24-55"). Therefore, the Court should reject arguments to the contrary made by Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") in its comments in opposition to the Remand Determination, Pl.'s Comments in Opp'n to the Remand Results (Aug. 30, 2024), ECF No. 67 ("Plaintiff Opp. Cmts."), and the Court should sustain Commerce's determination as it is supported by substantial evidence and in accordance with law.

## II. ARGUMENT

Commerce has properly revisited its specificity determination regarding the GOK's provision of additional KAUs to certain industries and companies under the KETS program, and the agency has appropriately found that the KETS program is *de facto* specific. Consistent with the Court's opinion, Commerce is no longer relying on a finding of *de jure* specificity – but rather one of *de facto* specificity – in determining that the KETS program provides countervailable subsidies. *See* Remand Determination at 7-11; Slip Op. 24-55 at 24-27. Commerce's *de facto*

1

Ct. No. 22-00170

specificity analysis is supported by additional data collected from the GOK as part of this remand proceeding as well as recent court precedent affirming the agency's ability to reach a *de facto* specificity determination in similar circumstances. *See* Remand Determination at 8-9. Indeed, as addressed further below, Commerce's *de facto* specificity analysis in this proceeding follows the very framework recently endorsed by the U.S. Court of Appeals for the Federal Circuit ("CAFC"). *See Gov't of Quebec v. United States*, 105 F.4th 1359, 1373-75 (Fed. Cir. 2024). Plaintiff's attempts to distinguish from *Quebec* and analogize to other non-binding precedent are unavailing. Rather, Commerce's revised specificity analysis is supported by the record, the statute, and prior cases. Thus, the Court should sustain Commerce's *de facto* specificity determination.

To start, Commerce's *de facto* specificity analysis in the Remand Determination adheres to the approach affirmed recently by the CAFC in *Quebec*. As the agency acknowledges in the Remand Determination, in *Quebec*, the CAFC "affirmed Commerce's practice of finding *de facto* specificity where the recipients of the subsidy are limited in number." Remand Determination at 9; *see also Quebec*, 105 F.4th at 1373-75. Commerce further explained that in the administrative proceeding underlying *Quebec*, the agency had "found a program providing benefits to 4,930 tax credit recipients, out of 387,949 total corporate tax filers, to be *de facto* specific given that the recipients were limited in number." Remand Determination at 9. Commerce then compared that finding to the even more limited number of subsidy recipients in this case, where 504 Korean companies received additional KAUs under the KETS program out of 787,438 companies operating in the GOK's jurisdiction. *See id.* at 8-9. Commerce also pointed to other instances where this Court has upheld the agency's *de facto* specificity analysis, "observing similar proportions of beneficiaries when comparing program recipients to the number of entities throughout the entire economy. *Id.* at 9. Put simply, Commerce's approach to assessing the limited

Ct. No. 22-00170

number of recipients of KAUs under the KETS program is entirely consistent with the framework endorsed by this Court and, most recently, the CAFC.

Commerce's analogy to the CAFC's *Quebec* decision is appropriate and supports its *de facto* specificity determination here in several respects. First, the total number of Korean additional KAU recipients in this case (*i.e.*, 504) is lower than the number of Canadian on-the-job training credit recipients in *Quebec* (*i.e.*, 4,930). *See* Remand Determination at 8; *Quebec*, 105 F.4th at 1374. Second, the percentage of Korean subsidy recipients (*i.e.*, 0.06%) is significantly lower than the percentage of Canadian subsidy recipients (*i.e.*, 1.27%) in *Quebec*. *See* Remand Determination at 8; *Quebec*, 105 F.4th at 1374. That is, by both measures, the GOK's provision of additional KAUs through the KETS program is <u>more limited</u> than the on-the-job training credits provided by Government of Quebec. Therefore, Commerce's finding of *de facto* specificity here, where the subsidy recipients are even more limited in number, is fully supported by the CAFC's recent decision in *Quebec*.

Additionally, the nature of the subsidies and the comparison between recipients and potential recipients is analogous between the two cases. *See* Remand Determination at 8-9; *Quebec*, 105 F.4th at 1374-75. In *Quebec*, the CAFC endorsed Commerce's comparison of the number of companies receiving the on-the-job training credit against the total number of corporate tax filers over the same period. *See Quebec*, 105 F.4th at 1374. In other words, the court did not require Commerce to only compare the number of credit recipients against the number of companies that were shown to have actually done on-the-job training during that period. *See id.* Rather, the court found that, "{g}iven the nature of the program, the limited number of recipients (about 1.27% of corporate entities) . . . the on-the-job credit is not one of widespread availability and use throughout the economy." *Id.* at 1375. Likewise, here, Commerce appropriately compares

3

Ct. No. 22-00170

the number of Korean companies receiving additional KAUs against the total number of companies under the GOK's jurisdiction. *See* Remand Determination at 8-9. That comparison similarly shows that the companies receiving additional KAUs through the KETS program are limited, representing only 0.06% of eligible companies, which demonstrates that the subsidy is not widely available throughout Korea.

Plaintiff's attempt to distinguish the facts of this proceeding from *Quebec* are unavailing, as Commerce has found. *See id.* at 17-18; Plaintiff Opp. Cmts. at 7-8. Plaintiff stresses that Commerce's comparison group in *Quebec* was a "logically consistent apples-to-apples comparison" but that its comparison group here is not logically consistent. Plaintiff Opp. Cmts. at 8. However, that is just a reiteration of Plaintiff's other arguments. As illustrated above, the facts of this proceeding are strikingly similar to those in *Quebec* and even more so support Commerce's finding that this subsidy was provided to a limited number of recipients. Indeed, Plaintiff ignores the similarities between *Quebec* and the present case, which Commerce has appropriately relied on to support its determination here.

Moreover, Plaintiff repeatedly and erroneously analogizes to a decision from this Court, *Mosaic Co. v. United States*, 659 F. Supp. 3d 1285, 1314-17 (Ct. Int'l Trade 2023), which has been effectively superseded by the CAFC's decision in *Quebec*. *See* Plaintiff Opp. Cmts at 4-7. As Commerce reasoned in the Remand Determination, Plaintiff's attempted analogy is not persuasive. *See* Remand Determination at 14-16. Indeed, in *Quebec*, the CAFC found the appellants reliance on *Mosaic* to be "unpersuasive," finding the facts to be distinguishable. *Quebec*, 105 F.4th at 1375 n.10. Notably, the proceeding underlying *Mosaic* concerned corporate taxpayers who received tax penalty relief, and the Court found it more appropriate to compare the relief recipients against the number of companies paying tax penalties. *See Mosaic*, 659 F. Supp. 3d at 1314-17. This case

4

Ct. No. 22-00170

concerns an entirely different program, which Commerce has properly determined is best assessed as a comparison of additional KAU recipients against all companies operating in the GOK's jurisdiction. *See* Remand Determination at 8-9. Further, as Commerce explained in the Remand Determination, the number of Korean recipients here (*i.e.*, 504) is a small fraction of the number of Moroccan subsidy recipients at issue in *Mosaic* (*i.e.*, 8,761). *Id.* at 15.

To the extent there is any potential analogy to the facts underlying *Mosaic*, it is Plaintiff that is not making an apples-to-apples comparison. Like *Mosaic*, the KETS program contains a penalty provision, which imposes a surcharge if a participating company fails to surrender the necessary number of KAUs at the end of a specified compliance period. *See* Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) (final results of countervailing duty admin. rev.; 2019), P.R. 132 at 21. So, if Commerce were to follow *Mosaic*, it would be by comparing the number of Korean companies who received penalties under the KETS program to the number of Korean companies receiving additional KAUs under program. However, that is not the type of subsidy program Commerce is investigating. Rather, Commerce is examining companies that received additional KAUs, regardless of whether they paid a penalty or not. *See* Remand Determination at 7-11. Thus, Commerce has appropriately compared the total number of subsidy recipients to the number of companies operating in the GOK's jurisdiction in order to determine whether there is widespread use of this subsidy program throughout the Korean economy.

As a final matter, Commerce correctly notes that a distinguishing fact of this proceeding is that the number of Korean subsidy recipients (*i.e.*, 504) is very low in comparison to the size of the Korean economy and industrial sector. *Id.* at 8-9. This led the agency to conclude that "a program which has only 504 company recipients in an economy the size of Korea cannot be

5

considered 'widely used' throughout the economy within the spirit of the specificity test as outlined in the {Statement of Administrative Action}." *Id.* at 8.  That is a critical factual determination that distinguishes this case from any case that Plaintiff identifies.  *See* Plaintiff Opp. Cmts. at 4-10.  As the CAFC outlined in *Quebec*, Commerce's *de facto* specificity analysis is a "fact-intensive and case-specific inquiry, where the factors involved and the weight accorded to them vary from case to case." *Quebec*, 105 F.4th at 1374 (citing *Royal Thai Gov't v. United States*, 436 F.3d 1330, 1335-36 (Fed. Cir. 2006)).  Therefore, as the CAFC did in *Quebec*, the Court should allow Commerce to "exercise{} the necessary latitude afforded it in choosing the appropriate approach" to conduct its *de facto* specificity analysis.  *Quebec*, 105 F.4th at 1374.

## III. CONCLUSION

For the reasons above, Defendant-Intervenor respectfully requests that the Court reject the arguments raised by Plaintiff and sustain Commerce's finding of *de facto* specificity in the Remand Determination and its decision to continue to countervail the subsidies received by Hyundai Steel from the provision of additional KAUs by the GOK through the KETS program.

    Respectfully submitted,

    */s/ Alan H. Price*
    Alan H. Price, Esq.
    Christopher B. Weld, Esq.
    Derick G. Holt, Esq.
    Theodore P. Brackemyre, Esq.

    **WILEY REIN LLP**
    2050 M Street, NW
    Washington, DC 20036
    (202) 719-7000

    *Counsel to Nucor Corporation*

Dated: September 30, 2024

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 1,758 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

September 30, 2024
(Date)