Slip Op. 25-124

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>NUCOR CORPORATION,<br><br>    Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge<br>Court No. 22-00170<br><br>**PUBLIC VERSION** |

## OPINION

[Sustaining the U.S. Department of Commerce's Second Remand Results]

Dated: September 22, 2025

Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Jordan L. Fleischer, Nicholas C. Duffey, and Ryan R. Migeed, Morris, Manning & Martin, LLP, of Washington, DC, for Plaintiff Hyundai Steel Company.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. On the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director. Of counsel on the brief was Heather Holman, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Alan H. Price, Christopher B. Weld, Derick G. Holt, and Theodore P. Brackemyre, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Nucor Corporation.

Barnett, Chief Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") redetermination upon a second remand.  Final Results of Redetermination Pursuant to Ct. Remand ("Second Remand Results"), ECF No. 63-1.  The Second Remand Results further amend Commerce's determination in *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) (final results of countervailing duty admin. review; 2019) ("*Final Results*"), ECF No. 20-4.[1]  The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[2] and 28 U.S.C. § 1581(c).  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  For the reasons discussed herein, the court will sustain Commerce's Second Remand Results.

## BACKGROUND

A countervailable subsidy "exists when . . . a foreign government provides a financial contribution . . . to a specific industry" that confers "a benefit" to "a recipient within the industry."  *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365,

---

[1] The administrative record for the Second Remand Results is contained in a Public Second Remand Administrative Record, ECF No. 65-1, and a Confidential Second Remand Administrative Record, ECF No. 65-2.  The administrative record accompanying the *Final Results* likewise consists of a Public Record ("PR"), ECF No. 20-1, and a Confidential Record ("CR"), ECF No. 20-2. The parties filed joint appendices containing record documents cited in their briefs.  Confid. Second Remand J.A. ("2RCJA"), ECF No. 70; Public Second Remand J.A., ECF No. 71.  The court references the confidential record documents unless otherwise specified.
[2] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code.  All references to the U.S. Code are to the 2018 edition unless otherwise specified.

Court No. 22-00170 Page 3

1369 (Fed. Cir. 2014) (citing 19 U.S.C. § 1677(5)(B)).  Thus, one of the requirements for a subsidy to be countervailable is specificity.  19 U.S.C. § 1677(5A).  A countervailable subsidy can be either *de jure* or *de facto* specific.  *Id.* § 1677(5A)(D).

Plaintiff Hyundai Steel Company ("Hyundai Steel") commenced this action to challenge Commerce's decision in the *Final Results* to countervail the Government of the Republic of Korea's ("the GOK") emissions trading program, called the K-ETS. Compl., ECF No. 10.  The K-ETS applies across the Korean economy and assigns obligations to companies that emit 125,000 tons or more of carbon dioxide or equivalents or have a single place of business that emits 25,000 tons or more of carbon dioxide or equivalents.  GOK's Carbon Emissions New Subsidy Allegation Questionnaire Resp. (May 17, 2021) ("GOK's NSA Resp.") at 8, CR 77, PR 76, 2RCJA Tab 1.  For each compliance year, the GOK uses emissions data from previous years to allocate emissions permits to companies, subject also to the phase of the program, the number of permits available, and the number of K-ETS participants.  *Id.* at 1–3.

During the 2019 period of review covered by the *Final Results*, there were fewer than 1000 K-ETS participants.  *Id.* at 19.[3]  All K-ETS participants received a gratuitous allocation of 97 percent of their expected permit needs ("the standard allocation") with the remaining three percent held in reserve.  *Id.* at 2.  Companies that met certain "international trade intensity" or "production cost" criteria received 100 percent of their

---

[3] The actual number of companies with compliance obligations pursuant to the K-ETS program during the 2019 period of review ([[     ]]) is considered business proprietary information.

expected permit needs ("the full allocation"). *Id.* at 2, 10. Hyundai Steel was among the 504 companies that received the full allocation. Second Remand Results at 1, 8. In 2019, there were 787,438 companies under the jurisdiction of the GOK. GOK's NSA Resp. at 20.

In two prior opinions, the court addressed and ultimately sustained Commerce's financial contribution and benefit findings with respect to the K-ETS. *Hyundai Steel Co. v. United States* (*Hyundai Steel I*), 47 CIT __, __, 659 F. Supp. 3d 1327, 1333–38 (2023); *Hyundai Steel Co. v. United States (Hyundai Steel II)*, 48 CIT __, __, 701 F. Supp. 3d 1398, 1402–09 (2024).[4] In both rulings, the court remanded Commerce's determination that the K-ETS was *de jure* specific. *Hyundai Steel I*, 659 F. Supp. 3d at 1341–43; *Hyundai Steel II*, 701 F. Supp. 3d at 1409–14. Commerce has reconsidered the issue of specificity and determined, under protest,[5] that the subsidy conferred by the K-ETS (i.e., the difference between the standard allocation and the full allocation) is *de facto* specific. Second Remand Results at 2.[6]

> A subsidy is *de facto* specific pursuant to section 1677(5A)(D)
>
> if one or more of the following factors exist: (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited

---

[4] *Hyundai Steel I* and *Hyundai Steel II* provide additional background information, familiarity with which is presumed.

[5] By making the determination under protest, Commerce preserves its right to appeal. *See Viraj Grp. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

[6] "The Court has regularly rejected Commerce's reasoning" in support of the agency's *de jure* specificity determination "as applied to [the K-ETS] as well as similar programs." *POSCO v. United States*, Slip Op. 25-100, 2025 WL 2269772, at *8 n.11 (CIT Aug. 8, 2025) (collecting cases). *But see Hyundai Steel Co. v. United States*, 49 CIT __, __, 753 F. Supp. 3d 1355, 1360 (2025) (sustaining Commerce's determination that the additional allocation pursuant to the K-ETS is *de jure* specific).

    in number; (II) An enterprise or industry is a predominant user of the subsidy; (III) An enterprise or industry receives a disproportionately large amount of the subsidy; (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

19 U.S.C. § 1677(5A)(D)(iii).  As this statutory language indicates, when "a single factor warrants a finding of specificity," Commerce is not required to undertake any further analysis.  19 C.F.R. § 351.502(a).  Here, Commerce determined that the additional allocation is *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(I) because it was limited "to just 504 recipients out of the 787,438 companies operating in the GOK's jurisdiction during 2019."  Second Remand Results at 8 (footnote omitted); *see also id.* at 13–14 (noting that the number of recipients of the full allocation "amounted to less than 0.1 percent of companies operating in the Korean economy").  Commerce explained that the methodology on which the agency relied furthered the agency's obligation to "examin[e] a program's usage *throughout an economy*."  *Id.* at 14.  Hyundai Steel challenges this determination.  Confid. Pl.'s Cmts. in Opp'n to the Remand Results ("Pl.'s Cmts."), ECF No. 66.

DISCUSSION

 **A.  Parties' Contentions**

  Hyundai Steel contends that Commerce erred in comparing the number of companies that received the full allocation (the numerator in Commerce's methodology) to the number of companies operating in the country (the denominator) and that Commerce should have limited the denominator to the much smaller number of K-ETS participants.  Pl.'s Cmts. at 2–5.  With that smaller denominator, Hyundai Steel

Court No. 22-00170                                                                                                           Page 6

contends, Commerce would have found that the companies receiving the full allocation are not "limited in number." *Id.* at 5.[7] Hyundai Steel relies, in part, on *Mosaic Co. v. United States*, 47 CIT __, 659 F. Supp. 3d 1285 (2023), *id.* at 4–7, in which the court remanded Commerce's *de facto* specificity determination when the agency compared the number of corporate taxpaying recipients of penalty relief to the total number of corporate taxpayers, *Mosaic*, 659 F. Supp. 3d at 1314–15.[8]

      Defendant United States ("the Government") contends that Commerce's *de facto* specificity analysis "effectuated the purpose of the statute" by establishing that the full allocation is not widely used throughout the Korean economy. Def.'s Cmts. in Supp. of Remand Redetermination at 5–6, ECF No. 68. The Government further contends that Plaintiff's reliance on *Mosaic* is misplaced because the underlying facts are distinct. *Id.* at 6–8. Instead, the Government contends, the court should find instructive the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") decision in *Government of Québec v. United States*, 105 F.4th 1359 (Fed. Cir. 2024). *Id.* at 8–9. The Government also finds support for Commerce's determination in the loan restructuring program in *Nucor Corp. v. United States*, 45 CIT __, 494 F. Supp. 3d 1377 (2021), and the goods for less than adequate remuneration ("LTAR") determinations in *Wilmar Trading PTE*

---

[7] According to Hyundai Steel, the relevant denominator is the [[ ]] K-ETS participants, and they note that [[ ]] percent of those participants received the full allocation. Pl.'s Cmts. at 5.

[8] On remand from *Mosaic*, Commerce found the program *de facto* specific on a disproportionality basis pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III), *see Mosaic Co. v. United States*, 49 CIT __, __, 744 F. Supp. 3d 1367, 1378 (2025), a different statutory basis than the one Commerce relied on here. The court again remanded the determination. *Id.* at 1379–81.

Court No. 22-00170 Page 7

*Ltd. v. United States*, 44 CIT __, 466 F. Supp. 3d 1334 (2020), and *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 39 CIT __, 61 F. Supp. 3d 1306 (2015), respectively.  Defendant-Intervenor Nucor Corporation advances similar arguments and contends that *Government of Québec* "superseded" *Mosaic*.  See Def.-Int.'s Cmts. in Supp. of the Final Results of Redetermination Pursuant to Ct. Remand at 3–4, ECF No. 69.

### B. Analysis

The specificity test "function[s] as an initial screening mechanism to winnow out only those foreign subsidies which truly are broadly available and widely used throughout an economy."  Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), H.R. Doc. No. 103–316 vol. 1, at 929 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4242.[9]  "[T]he specificity test was not intended to function as a loophole through which narrowly focused subsidies provided to or used by discrete segments of an economy could escape the purview of the CVD law."  *Id.* at 930, 1994 U.S.C.C.A.N. at 4242.  The fact that use of a subsidy may be limited by the "inherent characteristics" of the good or service is irrelevant for *de facto* specificity. *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,359 (Dep't Commerce Nov. 25, 1998) ("*CVD Preamble*") (citing SAA at 932, 1994 U.S.C.C.A.N. at 4244).  The specificity test thus distinguishes between a widely distributed subsidy and one where the actual number of recipients is limited.

---

[9] The SAA is the authoritative interpretation of the statute.  19 U.S.C. § 3512(d).

This court and the Federal Circuit have sustained Commerce determinations when the agency compared the number of subsidy recipients to the number of companies or industries operating in the economy. *See, e.g.*, *Gov't of Québec*, 105 F.4th at 1374 (sustaining Commerce's *de facto* specificity finding on a "limited in number" basis when 4,930 tax credit recipients were compared to 387,949 corporate taxpayers); *Nucor Corp.*, 494 F. Supp. 3d at 1383 (sustaining Commerce's *de facto* specificity finding when just 25 companies operating in Korea received the benefit of the loan restructuring program); *Wilmar Trading*, 466 F. Supp. 3d at 1358–59 (sustaining Commerce's *de facto* specificity finding when 14 distinct industries benefitted from Indonesia's export levy on crude palm oil because the actual recipients "did not 'encompass all possible subsidy recipients within the economy of Indonesia'") (citation omitted); *Borusan*, 61 F. Supp. 3d at 1342–43 (sustaining Commerce's *de facto* specificity finding when eight industries out of all industries in the economy used hot-rolled steel purchased for less than adequate remuneration). Hyundai Steel argues that these cases are inapposite because they involved subsidies in the form of tax programs such that the total number of taxpayers represented an appropriate denominator or otherwise involved distinct programs. Pl.'s Cmts. at 10.

Hyundai Steel's contention is unpersuasive and in conflict with the purpose of the specificity test. As Commerce explained, Hyundai Steel's reliance on the fact that not all companies operating in the economy are subject to the K-ETS only supports Commerce's finding that the benefit of the full allocation is, likewise, not "widely available." Second Remand Results at 20; *see also* Pl.'s Cmts. at 10 (reprising the

argument). As set forth above, the specificity test is not "a loophole through which" subsidies "used by discrete segments of an economy" (such as the K-ETS) may elude countervailability. SAA at 930, 1994 U.S.C.C.A.N. at 4242. Moreover, there is no requirement that recipients of the benefit of the full allocation share some other characteristic, such as participation in the K-ETS, with the group comprising the denominator: "the fact that users may be limited due to the inherent characteristics of what is being offered" is not "a basis for finding the subsidy non-specific." *CVD Preamble*, at 63 Fed. Reg. at 65,359.

Commerce's determination in this case may be analogized to the agency's LTAR determinations. In a scenario in which an input is provided for less than adequate remuneration, an argument might be made that the number of recipients of the alleged benefit (i.e., input purchasers) should be compared to the number of companies that do or could use that particular input. The court, however, is not aware of a countervailing duty determination being made on such a basis. To the contrary, specificity of LTAR programs is regularly examined based on a limited number of recipients without regard to why they may be limited and within the context of the economy as a whole. *See, e.g.*, SAA at 931–32, 1994 U.S.C.C.A.N. at 4243–44; *Borusan*, 61 F. Supp. 3d at 1342–43. The statute includes no such limiting language, and the SAA confirms that no such limitation should be implied. *See* SAA at 931–32, 1994 U.S.C.C.A.N. at 4243–44. In other words, a subsidy that has some inherent characteristic that otherwise limits the number of recipients is not rendered non-specific, and therefore non-countervailable, simply because those who did not receive the subsidy were excluded by an inherent

characteristic of the subsidy. Hyundai Steel's observation that "[m]ost of the 787,438 companies operating in Korea receive no permits because they are not subject to the KETS program," Pl.'s Cmts. at 2, merely reflects an inherent characteristic of the emissions trading system and is not a basis for finding the subsidy non-specific.

Hyundai Steel's reliance on *Mosaic* does not persuade the court to reach a different conclusion. In that case, the court remanded Commerce's choice of both numerator and denominator, namely, corporate taxpaying recipients of the penalty relief and total number of corporate taxpayers, because the program at issue was not limited to corporate taxpayers. *Mosaic*, 659 F. Supp. 3d at 1315. The court found that "[t]he record evidence does not establish that the tax fines and penalties reduction program [at issue] is anything other than a common, ordinary tax administration program, available to all taxpayers, under which the taxing authority may mitigate a penalty." *Id.* at 1316. The court directed Commerce to consider the potentially wider availability of the benefit, *id.* at 1316–17, whereas in this case, Hyundai Steel argues that the denominator for Commerce's specificity determination should be *lower*, Pl.'s Cmts. at 5. While Hyundai Steel's preferred equation may shed light on the prevalence of the full allocation among K-ETS participants, it does not speak to whether that benefit is widely available throughout the economy.[10]

---

[10] To the extent that reliance on *Mosaic* suggests a different conclusion, the court notes that it is a non-final opinion and decisions by CIT judges are non-binding. *Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989).

## CONCLUSION

For the reasons discussed above, the court sustains Commerce's *de facto* specificity finding set forth in the Second Remand Results. Judgment will enter accordingly.

/s/     Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: September 22, 2025
      New York, New York